CSD 1160 [05/15/03]
Name, Address, Telephone No. & I.D. No.

JOHN VOZENILEK, ESQ.      (714) 965-1216  BAR NO. 82811
19900 Beach Boulevard
Suite C1
Huntington Beach, California  92646

attorneyjohnv@yahoo.com

```
Case # : 09-19670-PB7
Debtor: PANOCHE VALLEY, LLC
Judge..: PETER BOWIE
Chapter: ST
--------------------------------
Filed : April 16, 2010  15:39:14
Deputy : JESUS DUNEGHY
Receipt: 209603
Amount : $150.00
--------------------------------
```

### UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF CALIFORNIA
325 West "F" Street, San Diego, California 92101-6991

| In Re | |
| PANOCHE VALLEY LLC, | |
| Debtor. | BANKRUPTCY NO. 09-19670-PB11 |
| LIBERTY ASSET MANAGEMENT CORPORATION, | RS NO.  JV 1 |
| Moving Party | |
| PANOCHE VALLEY LLC, | |
| Respondent(s) | |

## MOTION FOR RELIEF FROM AUTOMATIC STAY
☑ REAL PROPERTY        ☐ PERSONAL PROPERTY

Movant in the above-captioned matter moves this Court for an Order granting relief from the automatic stay on the grounds set forth below.

1.    A Petition under Chapter  ☐ 7  ☑ 11  ☐ 12  ☐ 13  was filed on _____12/23/2009_____.

2.    Procedural Status:

   a.    ☐    Name of Trustee Appointed *(if any)*:

   b.    ☑    Name of Attorney of Record for Trustee *(if any)*:   DAVID A. ORTIZ

   c.    ☐    *(Optional)* Prior Filing Information:
         Debtor has previously filed a Bankruptcy Petition on:_____.
         If applicable, the prior case was dismissed on: _____.

   d.    ☐    *(If Chapter 13 case)*: Chapter 13 Plan was confirmed on _____ or a confirmation hearing is
         set for _____.

Movant alleges the following in support of its Motion:

1.    ☑    The following real property is the subject of this Motion:
   a.       Street address of the property including county and state:

         2483-2487  Kettner Boulevard
         San Diego, San Diego County, California  92101

   b.       Type of real property (e.g., single family residence, apartment building, commercial, industrial, condominium,
            unimproved):

            Retail office building

   c.       Legal description of property is attached as Exhibit ") ≤

CSD 1160

CSD 1160 (Page 2) [05/15/03]

    d.    If a chapter 11 or 13 case and if non-payment of any post-petition payment is a ground for relief, attach the accounting required by Local Bankruptcy Rule 4001-2(a)(4) as Exhibit B.

    e.    *Fair market value of property as set forth in the Debtor's schedules: $_____1,606,000.00 .

    f.    *Nature of Debtor's interest in the property:

       Fee Simple.

2.  ☐  The following personal property is the subject of this Motion *(describe property)*:

    a.    Fair market value of property as set forth in the Debtor's schedules: $_____ .

    b.    Nature of Debtor's interest in the property:

3.    *Fair market value of property according to Movant: $_____1,410,000.00.

4.    *Nature of Movant's interest in the property:  Assigned Holder of Deed of Trust

5.    *Status of Movant's loan:
    a.    Balance owing on date of Order for Relief:    $_____793,784.11
    b.    Amount of monthly payment:    $_____
    c.    Date of last payment:    July 2009
    d.    If real property,
       i.    Date of default:    5/5/2009
       ii.    Notice of Default recorded on:    8/13/2009
       iii.    Notice of Sale published on:    12/2/2009
       iv.    Foreclosure sale currently scheduled for:    4/19/2010
    e.    If personal property,
       i.    Pre-petition default:    $_____    No. of months:_____
       ii.    Post-petition default:    $_____    No. of months:_____

6.    *(If Chapter 13 Case, state the following:)*
    a.    Date of post-petition default:    _____
    b.    Amount of post-petition default:    $_____

7.    Encumbrances:
    a.    Voluntary encumbrances on the property listed in the Schedules or otherwise known to Movant:

| Lender Name | Principal Balance | (IF KNOWN) Pre-Petition Arrearages Total Amount - # of Months | | Post-Petition Arrearages Total Amount - # of Months | |
|---|---|---|---|---|---|
| 1st: Preferred Bank | 699,848.69 | 45,683.23 | 5 | 34,117.20 | 4 |
| 2nd: | | | | | |
| 3rd: | | | | | |
| 4th: | | | | | |
| Totals for all Liens: | $ 699,848.69 | $ 45,683.23 | | $ 34,117.20 | |

    b.    Involuntary encumbrances of record (e.g., tax, mechanic's, judgment and other liens, lis pendens) as listed in schedules or otherwise known to Movant:
       ☐  See attached page, if necessary.

*Separately filed Declaration required by Local Bankruptcy Rule 4001-2(a)(5).
CSD 1160

CSD 1160 **(Page 3)** [05/15/03]

8. Relief from the automatic stay should be granted because:

a. ☑ Movant's interest in the property described above is not adequately protected.

b. ☐ Debtor has no equity in the ☐ real property ☐ personal property described above and such property is not necessary to an effective reorganization.

c. ☑ The property is "single asset real estate", as defined in 11 U.S.C. § 101(51B), and 90 days (or _____ days as ordered by this court) have passed since entry of the order for relief in this case, and

    i. the Debtor/Trustee has not filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; and

    ii. the Debtor/Trustee has

        (1) ☑ not commenced monthly payments to each creditor whose claim is secured by the property (other than a claim secured by a judgment lien or by an unmatured statutory lien), or

        (2) ☐ commenced payments, but such payments are less than an amount equal to interest at a current fair market rate on the value of each creditors' interest in the property.

d. ☐ *Other cause exists as follows *(specify)*: ☐ See attached page.

When required, Movant has filed separate Declarations pursuant to Local Bankruptcy Rule 4001-2(a)(5) and (6).

Movant attaches the following:

1. ☑ Other relevant evidence:
    Declarations of Anne Cho and John Vozenilek

2. ☐ *(Optional)* Memorandum of points and authorities upon which the moving party will rely.

WHEREFORE, Movant prays that this Court issue an Order granting the following:

☑ Relief as requested.

☐ Other:

Dated: April 13, 2010

_____
JOHN VOZENILEK
[Attorney for] Movant

*Separately filed Declaration required by Local Bankruptcy Rule 4001-2(a)(5).
CSD 1160

EXHIBIT "1"

LEGAL DESCRIPTION

6638

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF **SAN DIEGO**, STATE OF **CALIFORNIA**, AND IS DESCRIBED AS FOLLOWS:

**PARCEL A:**

LOTS 2 AND 3 OF WEST LAUREL STUDIOS, IN THE CITY OF SAN DIEGO, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 15620 (TENTATIVE MAP NO. 377076) FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAID SAN DIEGO COUNTY, SEPTEMBER 21, 2007.

**PARCEL B:**

A PRIVATE ACCESS AND UTILITIES EASEMENT OVER, UNDER, ALONG AND ACROSS THE FOLLOWING DESCRIBED PROPERTY:

THAT PORTION OF WEST LAUREL STUDIOS, IN THE CITY OF SAN DIEGO, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 15620 (TENTATIVE MAP NO. 377076), FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAID SAN DIEGO COUNTY, SEPTEMBER 21, 2007, SHOWN ON SAID MAP AS "PRIVATE ACCESS AND UTILITY EASEMENT" AND MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT MOST SOUTHERLY CORNER OF LOT 5 OF MAP NO. 15620, ALSO BEING A POINT ON THE EASTERLY RIGHT OF WAY LINE OF KETTNER BOULEVARD; THENCE ALONG SAID RIGHT OF WAY LINE NORTH 19°43'43" WEST, 5.00 FEET; THENCE NORTH 70°17'49" WEST; 38.21 FEET; THENCE NORTH 19°42'08" WEST. 20.10 FEET; THENCE SOUTH 70°16'47" WEST, 1.04 FEET; THENCE NORTH 20°00'54" WEST, 53.68 FEET; THENCE NORTH 70°18'28" EAST, 15.07 FEET; THENCE NORTH 19°43'13" WEST, 21.36 FEET TO A POINT ON THE NORTHERLY LOT LINE OF LOT 10, ALSO BEING A POINT ON THE SOUTHERLY RIGHT OF WAY LINE OF LAUREL STREET; THENCE EASTERLY ALONG SAID SOUTHERLY RIGHT OF WAY LINE NORTH 70°24'05" EAST, 20.01 FEET; THENCE LEAVING SAID RIGHT OF WAY LINE SOUTH 19°42'11" EAST, 18.25 FEET; THENCE NORTH 70°12'11" WEST, 3.33 FEET; THENCE SOUTH 19°42'11" EAST, 18.25 FEET; THENCE NORTH 70°24'05" WEST, 4.67 FEET; THENCE NORTH 19°42'20" WEST, 18.25 FEET; THENCE SOUTH 70°29'14" WEST. 4.67 FEET; THENCE SOUTH 19°38'53" EAST, 23.38 FEET; THENCE SOUTH 70°16'47" WEST, 8.00 FEET; THENCE SOUTH 19°42'07" EAST, 11.33 FEET; THENCE SOUTH 70°16'47" WEST. 8.66 FEET; THENCE SOUTH 19°42'07" EAST, 24.17 FEET TO THE SOUTH LINE OF LOT 8; THENCE SOUTH 19°42'07" EAST, 19.29 FEET TO THE SOUTH LINE OF LOT 7; THENCE SOUTH 70°16'10" WEST, 24.16 FEET;  THENCE SOUTH 19°43'13" EAST, 21.90 FEET TO A POINT ON THE SOUTHERLY LOT LINE OF SAID LOT 5; THENCE WESTERLY ALONG SAID SOUTHERLY LOT LINE SOUTH 70°22'33" WEST 50.21 FEET TO THE POINT OF BEGINNING.

Exhibit 1

1   JOHN VOZENILEK        BAR NO. 82811
    19900 Beach Boulevard
2   Suite C-1
    Huntington Beach, California 92648
3   (714) 965-1216
    FAX (714) 965-1081
4
    Attorney for Movant, Liberty Asset Management, Inc.
5

6               UNITED STATES BANKRUPTCY COURT

7               SOUTHERN DISTRICT – SAN DIEGO

8

9   In re:                          )   CASE NO.  09-19670-PB11
                                    )
10  PANOCHE VALLEY LLC,             )   RS. NO.  JV 1
                                    )
11          Debtor.                 )   Chapter  11
                                    )
12  _____ )   SUPPORTING DECLARATIONS  FOR
                                    )   RELIEF FROM STAY;
13  LIBERTY ASSET MANAGEMENT        )   DECLARATION OF ANNE CHO
    CORPORATION,                    )   DECLARATION OF JOHN VOZENILEK
14                                  )
            Movant,                 )
15                                  )
    vs.                             )
16                                  )
    PANOCHE VALLEY LLC,             )
17                                  )
            Respondent.             )
18                                  )

19

20

21

22

23

24

25

SUPPORTING DECLARATIONS RE: MOTION FOR RELIEF

### DECLARATION OF ANN CHO

I, ANN CHO, declare:

1.    I am at a person over the age of eighteen years and I have personal knowledge of the matters set forth in this declaration and if called upon to testify, I could and would competently testify to the following facts.  I have knowledge of Movant's interest in the real property that is the subject of this Motion because I am employed by Movant as a Senior Asset Manager.

2.    I am one of the custodians of the books, records and files of Movant that pertain to loans and extensions of credit given to Debtor concerning the Property.  I have personally worked on books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant, which were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the acts, conditions or events to which they relate.  Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the Court if required.

3.    The address of the Property that is the subject of this Motion is:  2483 & 2487 Kettner Boulevard, San Diego, San Diego County, California  (hereinafter  collectively referred to

1    as the "Property"). The "Property" is a commercial property and

2    the legal description or documents recording number (including

3    county of recording) is set forth in Movant's Deed of Trust

4    which is attached hereto as Exhibit "2" and incorporated by this

5    reference.

6       4.    Debtor's interest in the "Property" is as the Sole

7    owner and Debtor did list the "Property" in the Schedules filed

8    in this case.

9       5.    The amount of Movant's claim with respect to the

10    "Property" is as follows:

| | Prepetition | Postpetition | Total |
|---|---|---|---|
| a) Principal: | $ 699,848.69 | | $ 699,848.69 |
| b) Accrued Interest: | 45,683.23 | 34,117.20 | $ 79,800.43 |
| c) Costs: | 48,252.19 | 3,388.87 | $ 51,641.06 |
| d) **Total Claim as of April 14, 2010:** | **$ 793,848.11** | **37,506.07** | **$ 831,290.18** |

17       6.    The loan secured by Movant's Deed of Trust recorded

18    against the "Property" is all due and payable because it matured

19    on May 5, 2009.

20       7.    Movant holds a Deed of Trust that encumbers the

21    "Property" a true and correct copy of the recorded document is

22    attached hereto as Exhibit "2" and is incorporated by this

24    reference. A true and correct copy of the Promissory Note that

25    evidences the Movant's claim is attached hereto as Exhibit "3"

26    and is incorporated by this reference. A true and correct copy

of the Assignment transferring the beneficial interest under the Note and Deed of Trust to Movant is attached hereto as Exhibit "4" and is incorporated herein by this reference.

8. The status of Movant's claim relating to the "Property" is as follows:

- Current interest rate: **8.75%**

- Contractual maturity date: **May 5, 2009**

- Number of PREPETITION payments that have come due and were not made: **5**. Total amount: **$ 45,683.23**

- Number of POSTPETITION payments that have come due and were not made: **4**  Total amount: **$34,117.20**

- Last Payment received on: **July 6, 2009**

- Notice of Default recorded on: **August 13, 2009**

- Notice of Sale recorded on: **December 2, 2009**

- Foreclosure sale originally scheduled for: **12/28/2009**

- Foreclosure sale now scheduled for: **4/19/2010**

9. Movant has not been provided with evidence that the "Property" is currently insured as required under the terms of the loan.

10. On March 12, 2010, at the direction of my Attorney, I attended a Status Conference in this case. Debtor's Attorney, Mr. Nelson, appeared telephonically and stated to the Court that one of Debtor's "Properties" is in escrow and would close in

1  March of 2010 and that the Debtor's had received an offer on the

2  other property for $600,000.00.

3      I declare under the penalty of perjury under the laws of

4  the State of California that the foregoing is true and correct

5

6  and that this Declaration was executed on April 14, 2010 at

7  West Covina, California.

8  _____

9  ANNE CHO

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF JOHN VOZENILEK

I, JOHN VOZENILEK, declare:

1.    I am at attorney at law duly licensed to practice in the state of California and am the attorney of record for Movant in this action.  If I am called as a witness I can competently testify to the following facts.

2.    My Clients retained me in the first week of January, to file a Motion for Relief from Automatic Stay against the Debtor in this case.  After doing some preliminary research I found that Debtor had some equity in the subject property commonly known as:   2483 and 2487 Kettner Boulevard, San Diego, California   (hereinafter collectively referred to as the "Property) which secures the Deed of Trust that my Clients presently own and which Deed of Trust is in foreclosure.  I contacted Mr. Nelson, the Debtor's Attorney, to find out what Debtor's intentions were regarding the "Property" in order to avoid unnecessary expense to both parties.

3.    Mr. Nelson told me that the only reason Debtor had filed bankruptcy was so that the "Property" could be sold and any remaining equity in the "Property" could be salvaged.  He told me that one of the two properties which are covered by the Deed of Trust now owned by my Client, had been in escrow but it could not close because the sale proceeds would not cover paying off the loan and the bank that owned the note, at that time, would not agree to a partial reconveyance.  I told Mr. Nelson to send me the escrow documents and told him that my Client would not be opposed to a partial reconveyance providing

1   that there remained sufficient equity in the second property to

2   pay off the balance of the Note.

3       4.   In my conversation with Mr. Nelson, I asked him

4   whether his Client would be willing to make any payments pending

5   closing of the escrow to which he replied that his Client did

6   not have funds to pay but that the escrow should close by the

7   end of January 2010.

8       5.   Since the beginning of January 2010 I left several

9   phone messages for Mr. Nelson asking him for copies of the sale

10  escrow instructions but I received no response.

11      6.   On March 8, 2010 Mr. Nelson answered his phone and

12  told me that he was ill and that once I provided him with a copy

13  of the assignment of the Deed of Trust he would immediately send

14  me a copy of the escrow instructions which show that the

15  "Property" is scheduled to close escrow before the end of March.

16  On that same day, March 8, 2010, I emailed Mr. Nelson a copy of

17  the assignment of Deed of Trust. Mr. Nelson acknowledged

18  receiving my email and the assignment but no escrow instructions

19  were ever sent to me.

20      7.   On March 12, 2010, after not receiving the escrow

21  instructions, I sent a letter to Mr. Nelson, a true and correct

22  copy of which is attached hereto as Exhibit "5". I received no

23  reply to this letter, neither Mr. Nelson nor the alleged escrow

24  sent me copies of escrow instructions escrow  and Mr. Nelson has

25  not returned my subsequent phone calls or email.

26      8.   Even though Debtor, according to our appraisal, has

27  equity in the "Property" neither Debtor nor Debtor's attorney

28  have provided us with assurances that Debtor's

---

**REAL PROPERTY DECLARATIONS**                                    Page 6

Chapter 11 is a legitimate reorganization and not just a delaying tactic.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this Declaration was executed on April 14, 2010 at Huntington Beach, California.

JOHN VOZENILEK

DOC    2008-0272688

RECORDATION REQUESTED BY:

*Stewart Title*

F11
15P

MAY 21, 2008     8:00 AM
OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE
GREGORY J. SMITH, COUNTY RECORDER
FEES:     53.00
DA:     1
**PAGES:**    15

WHEN RECORDED MAIL TO:
Preferred Bank
601 South Figueroa Street
Los Angeles, CA 90017

179

34-93400

FOR RECORDER'S USE ONLY

# DEED OF TRUST

THIS DEED OF TRUST is dated May 2, 2008, among Panoche Valley, LLC, a California limited liability company, whose address is P. O. Box 538, Fallbrook, CA 92088 ("Trustor"); Preferred Bank, whose address is 601 South Figueroa Street; 29th Floor, Los Angeles, CA 90017 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and Preferred Bank, whose address is 601 S. Figueroa Street, Suite 2000, Los Angeles, CA 90017 (referred to below as "Trustee").

CONVEYANCE AND GRANT. For valuable consideration, Trustor irrevocably grants, transfers and assigns to Trustee in trust, with power of sale, for the benefit of Lender as Beneficiary, all of Trustor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in San Diego County, State of California:

    See Exhibit "A" attached hereto and incorporated herein by this reference. THIS DEED OF TRUST CONSTITUTES A FIXTURE FILING UNDER SECTION 9502(b) OF THE UNIFORM COMMERCIAL CODE OF THE STATE OF CALIFORNIA. TO THE EXTENT THE GOODS ARE FIXTURES UNDER THE LAWS OF THE STATE OF CALIFORNIA, THE FIXTURES ARE OR ARE TO BECOME ATTACHED TO THE REAL PROPERTY DESCRIBED IN EXHIBIT "A" ATTACHED HERETO.

The Real Property or its address is commonly known as 2483 and 2487 Kettner Blvd., San Diego, CA 92101. The Assessor's Parcel Number for the Real Property is 533-630-03-00; 533-630-02-00.

Trustor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Trustor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. This is an absolute assignment of Rents made in connection with an obligation secured by real property pursuant to California Civil Code Section 2938. In addition, Trustor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS OF THE TRUSTOR UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST. THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

PAYMENT AND PERFORMANCE. Except as otherwise provided in this Deed of Trust, Trustor shall pay to Lender all amounts secured by this Deed of Trust as they become due, and shall strictly and in a timely manner perform all of Trustor's obligations under the Note, this Deed of Trust, and the Related Documents.

533-630-02-03

**DEED OF TRUST**   ⌐   **180**
(Continued)                                    Page 2

---

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Trustor agrees that Trustor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.** Until the occurrence of an Event of Default, Trustor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

**Duty to Maintain.** Trustor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.** Trustor represents and warrants to Lender that: (1) During the period of Trustor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Trustor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Trustor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Trustor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Trustor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Trustor or to any other person. The representations and warranties contained herein are based on Trustor's due diligence in investigating the Property for Hazardous Substances. Trustor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Trustor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Trustor's ownership or interest in the Property, whether or not the same was or should have been known to Trustor. The provisions of this section of the Deed of Trust, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Trustor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Trustor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Trustor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Trustor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Trustor's compliance with the terms and conditions of this Deed of Trust.

**Compliance with Governmental Requirements.** Trustor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Trustor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate

**DEED OF TRUST**
**(Continued)**

**181**

appeals, so long as Trustor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized.  Lender may require Trustor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.**  Trustor agrees neither to abandon or leave unattended the Property.  Trustor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.**  Lender may, at Lender's option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property.  A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property.  If any Trustor is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Trustor.  However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

**TAXES AND LIENS.**  The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

**Payment.**  Trustor shall pay when due (and in all events at least ten (10) days prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property.  Trustor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due and except as otherwise provided in this Deed of Trust.

**Right to Contest.**  Trustor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized.  If a lien arises or is filed as a result of nonpayment, Trustor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Trustor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien.  In any contest, Trustor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property.  Trustor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.**  Trustor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.**  Trustor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials and the cost exceeds $1,000.00.  Trustor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Trustor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.**  The following provisions relating to insuring the Property are a part of this Deed of Trust.

**Maintenance of Insurance.**  Trustor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender.  Trustor shall also procure and maintain comprehensive general liability



**DEED OF TRUST**      . **182.**
(Continued)                                    Page 4

insurance in such coverage amounts as Lender may request with Trustee and Lender being named as additional insureds in such liability insurance policies.    Additionally, Trustor shall maintain such other insurance, including but not limited to hazard, business interruption, and boiler insurance, as Lender may reasonably require.  Notwithstanding the foregoing, in no event shall Trustor be required to provide hazard insurance in excess of the replacement value of the improvements on the Real Property.  Policies shall be written in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender.  Trustor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days prior written notice to Lender.  Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Trustor or any other person.  Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Trustor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.**  Trustor shall promptly notify Lender of any loss or damage to the Property if the estimated cost of repair or replacement exceeds $1,000.00.  Lender may make proof of loss if Trustor fails to do so within fifteen (15) days of the casualty.  If in Lender's sole judgment Lender's security interest in the Property has been impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property.  If the proceeds are to be applied to restoration and repair, Trustor shall repair or replace the damaged or destroyed improvements in a manner satisfactory to Lender.  Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Trustor from the proceeds for the reasonable cost of repair or restoration if Trustor is not in default under this Deed of Trust.  Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness.  If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Trustor as Trustor's interests may appear.

**Trustor's Report on Insurance.**  Upon request of Lender, however not more than once a year, Trustor shall furnish to Lender a report on each existing policy of insurance showing:  (1)  the name of the insurer;  (2)  the risks insured;  (3)  the amount of the policy;  (4)  the property insured, the then current replacement value of such property, and the manner of determining that value; and  (5)  the expiration date of the policy.  Trustor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**LENDER'S EXPENDITURES.**  If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Trustor fails to comply with any provision of this Deed of Trust or any Related Documents, including but not limited to Trustor's failure to discharge or pay when due any amounts Trustor is required to discharge or pay under this Deed of Trust or any Related Documents, Lender on Trustor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property.  All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Trustor.  All such expenses will become a part of the Indebtedness and, at Lender's option, will  (A)  be payable on demand;  (B)  be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either  (1) the term of any applicable insurance policy; or  (2)  the remaining term of the Note; or  (C)  be treated as a balloon payment which will be due and payable at the Note's maturity.  The Deed of Trust also will secure payment of these amounts.  Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon

Exhibit 2

Pg 4

**DEED OF TRUST**
**(Continued)**

**183**

Page 5

Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Deed of Trust:

**Title.** Trustor warrants that: (a) Trustor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and (b) Trustor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Trustor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Trustor's title or the interest of Trustee or Lender under this Deed of Trust, Trustor shall defend the action at Trustor's expense. Trustor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Trustor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Trustor warrants that the Property and Trustor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Trustor in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature, and shall remain in full force and effect until such time as Trustor's Indebtedness shall be paid in full.

**CONDEMNATION.** The following provisions relating to eminent domain and inverse condemnation proceedings are a part of this Deed of Trust:

**Proceedings.** If any eminent domain or inverse condemnation proceeding is commenced affecting the Property, Trustor shall promptly notify Lender in writing, and Trustor shall promptly take such steps as may be necessary to pursue or defend the action and obtain the award. Trustor may be the nominal party in any such proceeding, but Lender shall be entitled, at its election, to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Trustor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If any award is made or settlement entered into in any condemnation proceedings affecting all or any part of the Property or by any proceeding or purchase in lieu of condemnation, Lender may at its election, and to the extent permitted by law, require that all or any portion of the award or settlement be applied to the Indebtedness and to the repayment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation proceedings.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

**Current Taxes, Fees and Charges.** Upon request by Lender, Trustor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Trustor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust; (2) a specific tax on Trustor which Trustor is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust; (3) a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Trustor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Deed of

2

Pg 5

**DEED OF TRUST**
**(Continued)**

**184**

Page 6

Trust, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Trustor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Trustor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. Trustor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Trustor shall not remove, sever or detach the Personal Property from the Property. Upon default, Trustor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Trustor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Trustor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Trustor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Trustor's obligations under the Note, this Deed of Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of Trust as first and prior liens on the Property, whether now owned or hereafter acquired by Trustor. Unless prohibited by law or Lender agrees to the contrary in writing, Trustor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Trustor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Trustor and at Trustor's expense. For such purposes, Trustor hereby irrevocably appoints Lender as Trustor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**PARTIAL RELEASES.** Lender shall execute partial releases of the lien of this Deed of Trust upon the following conditions: Partial releases shall be made in accordance with the Release Schedule attached to and made a part of the Business Loan Agreement of even date.

**FULL PERFORMANCE.** If Trustor pays all the Indebtedness when due, and otherwise performs all the obligations imposed upon Trustor under this Deed of Trust, Lender shall execute and deliver to Trustee a request for full reconveyance and shall execute and deliver to Trustor suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Lender may charge Trustor a reasonable reconveyance fee at the time of reconveyance.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Deed of Trust:

*Doc 2*
*Pg 6*

**Payment Default.** Trustor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Trustor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Deed of Trust or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Trustor.

**Compliance Default.** Failure to comply with any other term, obligation, covenant or condition contained in this Deed of Trust, the Note or in any of the Related Documents.

**Default on Other Payments.** Failure of Trustor within the time required by this Deed of Trust to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with the Property.

**Default in Favor of Third Parties.** Should Trustor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Trustor's property or Trustor's ability to repay the Indebtedness or perform their respective obligations under this Deed of Trust or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Trustor or on Trustor's behalf under this Deed of Trust or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Deed of Trust or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The dissolution of Trustor's (regardless of whether election to continue is made), any member withdraws from the limited liability company, or any other termination of Trustor's existence as a going business or the death of any member, the insolvency of Trustor, the appointment of a receiver for any part of Trustor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Trustor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Trustor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Trustor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Trustor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Trustor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Trustor under the terms of any other agreement between Trustor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Trustor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Trustor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Right to Cure.** If any default, other than a default in payment is curable and if Trustor has not been given a notice of a breach of the same provision of this Deed of Trust within the preceding twelve (12) months, it may be cured if Trustor, after receiving written notice from Lender demanding cure of such default: (1) cures the

default within fifteen (15) days; or  (2)  if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.**  If an *Event of Default* occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

**Election of Remedies.**  Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Trustor under this Deed of Trust, after Trustor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Foreclosure by Sale.**  Upon an *Event of Default* under this Deed of Trust, Beneficiary may declare the entire Indebtedness secured by this Deed of Trust immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold the Property, which notice Trustee shall cause to be filed for record.  Beneficiary also shall deposit with Trustee this Deed of Trust, the Note, other documents requested by Trustee, and all documents evidencing expenditures secured hereby.  After the lapse of such time as may then be required by law following the recordation of the notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell the Property at the time and place fixed by it in the notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale.  Trustee may postpone sale of all or any portion of the Property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement in accordance with applicable law.  Trustee shall deliver to such purchaser its deed conveying the Property so sold, but without any covenant or warranty, express or implied.  The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof.  Any person, including Trustor, Trustee or Beneficiary may purchase at such sale.  After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of:  all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

**Judicial Foreclosure.**  With respect to all or any part of the Real Property, Lender shall have the right in lieu of foreclosure by power of sale to foreclose by judicial foreclosure in accordance with and to the full extent provided by California law.

**UCC Remedies.**  With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code, including without limitation the right to recover any deficiency in the manner and to the full extent provided by California law.

**Collect Rents.**  Lender shall have the right, without notice to Trustor to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness.  In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender.  If the Rents are collected by Lender, then Trustor irrevocably designates Lender as Trustor's attorney-in-fact to endorse instruments received in payment thereof in the name of Trustor and to negotiate the same and collect the proceeds.  Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed.  Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.**  Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness.  The receiver may serve without bond if permitted by law.

# DEED OF TRUST
## (Continued)

⌐ **187**

Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Tenancy at Sufferance.** If Trustor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Trustor, Trustor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Note or available at law or in equity.

**Notice of Sale.** Lender shall give Trustor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Sale of the Property.** To the extent permitted by applicable law, Trustor hereby waives any and all rights to have the Property marshalled. In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Trustor also will pay any court costs, in addition to all other sums provided by law.

**Rights of Trustee.** Trustee shall have all of the rights and duties of Lender as set forth in this section.

**POWERS AND OBLIGATIONS OF TRUSTEE.** The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust:

**Powers of Trustee.** In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Trustor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

**Obligations to Notify.** Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Trustor, Lender, or Trustee shall be a party, unless the action or proceeding is brought by Trustee.

**Trustee.** Trustee shall meet all qualifications required for Trustee under applicable law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

*Successor Trustee.*  *Lender, at Lender's option, may from time to time appoint a successor Trustee to any Trustee appointed under this Deed of Trust by an instrument executed and acknowledged by Lender and recorded in the office of the recorder of San Diego County, State of California. The instrument shall contain, in addition to all other matters required by state law, the names of the original Lender, Trustee, and Trustor, the book and page where this Deed of Trust is recorded, and the name and address of the successor trustee, and the instrument shall be executed and acknowledged by Lender or its successors in interest. The successor trustee, without conveyance of the Property, shall succeed to all the title, power, and duties conferred upon the Trustee in this Deed of Trust and by applicable law. This procedure for substitution of Trustee shall govern to the exclusion of all other provisions for substitution.*

*Acceptance by Trustee.*  Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law.

**NOTICES.**  Any notice required to be given under this Deed of Trust shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust. Trustor requests that copies of any notices of default and sale be directed to Trustor's address shown near the beginning of this Deed of Trust. All copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust shall be sent to Lender's address, as shown near the beginning of this Deed of Trust. Any party may change its address for notices under this Deed of Trust by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Trustor agrees to keep Lender informed at all times of Trustor's current address. Unless otherwise provided or required by law, if there is more than one Trustor, any notice given by Lender to any Trustor is deemed to be notice given to all Trustors.

**STATEMENT OF OBLIGATION FEE.**  Lender may collect a fee, not to exceed the maximum amount permitted by law, for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**MISCELLANEOUS PROVISIONS.**  The following miscellaneous provisions are a part of this Deed of Trust:

*Amendments.*  This Deed of Trust, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Deed of Trust. No alteration of or amendment to this Deed of Trust shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

*Annual Reports.*  If the Property is used for purposes other than Trustor's residence, Trustor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Trustor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

*Caption Headings.*  Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

*Merger.*  There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

*Governing Law.*  **This Deed of Trust will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Deed of Trust has been accepted by Lender in the State of California.**

*Choice of Venue.*  If there is a lawsuit, Trustor agrees upon Lender's request to submit to the jurisdiction of the courts of Los Angeles County, State of California.

*No Waiver by Lender.*  Lender shall not be deemed to have waived any rights under this Deed of Trust unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this

Deed of Trust shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Deed of Trust. No prior waiver by Lender, nor any course of dealing between Lender and Trustor, shall constitute a waiver of any of Lender's rights or of any of Trustor's obligations as to any future transactions. Whenever the consent of Lender is required under this Deed of Trust, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Deed of Trust to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Deed of Trust. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Deed of Trust shall not affect the legality, validity or enforceability of any other provision of this Deed of Trust.

**Successors and Assigns.** Subject to any limitations stated in this Deed of Trust on transfer of Trustor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Trustor, Lender, without notice to Trustor, may deal with Trustor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Trustor from the obligations of this Deed of Trust or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Deed of Trust. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Deed of Trust shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Beneficiary.** The word "Beneficiary" means Preferred Bank, and its successors and assigns.

**Borrower.** The word "Borrower" means Panoche Valley, LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Deed of Trust.** The words "Deed of Trust" mean this Deed of Trust among Trustor, Lender, and Trustee, and includes without limitation all assignment and security interest provisions relating to the Personal Property and Rents.

**Default.** The word "Default" means the Default set forth in this Deed of Trust in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., Chapters 6.5 through 7.7 of Division 20 of the California Health and Safety Code, Section 25100, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.



**DEED OF TRUST**
**(Continued)**                          *190*                          Page 12

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Trustor's obligations or expenses incurred by Trustee or Lender to enforce Trustor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust.

**Lender.** The word "Lender" means Preferred Bank, its successors and assigns.

**Note.** The word "Note" means the promissory note dated May 2, 2008, **in the original principal amount of $750,000.00** from Trustor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. **NOTICE TO TRUSTOR: THE NOTE CONTAINS A VARIABLE INTEREST RATE.**

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Trustor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness; except that the words do not mean any guaranty or environmental agreement, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future leases, rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property together with the cash proceeds of the Rents.

**Trustee.** The word "Trustee" means Preferred Bank, whose address is 601 S. Figueroa Street, Suite 2000, Los Angeles, CA 90017 and any substitute or successor trustees.

**Trustor.** The word "Trustor" means Panoche Valley, LLC.

*2*

**DEED OF TRUST**
**(Continued)**

191

Page 13

---

TRUSTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND TRUSTOR AGREES TO ITS TERMS, INCLUDING THE VARIABLE RATE PROVISIONS OF THE NOTE SECURED BY THIS DEED OF TRUST.

TRUSTOR:

PANOCHE VALLEY, LLC

By: _____

    **Ray Gray, Manager of Panoche Valley, LLC**

## CERTIFICATE OF ACKNOWLEDGMENT

STATE OF _CALIFORNIA_                               )

                                                    ) SS

COUNTY OF _SAN DIEGO_                               )

On _14 MAY_____, 20_08_ before me, _SETH ESSENFELD - NOTARY PUBLIC_
(here insert name and title of the officer)

personally appeared **Ray Gray**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

OFFICIAL SEAL
SETH ESSENFELD
NOTARY PUBLIC-CALIFORNIA
COMM. NO. 1640504
SAN DIEGO COUNTY
MY COMM. EXP. FEB. 20, 2010

**WITNESS my hand and official seal.**

Signature _____                    **(Seal)**

EXH 2

Pg 13

**DEED OF TRUST**
**(Continued)**

*192*

Page 14

**(DO NOT RECORD)**

**REQUEST FOR FULL RECONVEYANCE**
(To be used only when obligations have been paid in full)

To: _____, Trustee

The undersigned is the legal owner and holder of all indebtedness secured by this Deed of Trust. All sums secured by this Deed of Trust have been fully paid and satisfied. You are hereby directed, upon payment to you of any sums owing to you under the terms of this Deed of Trust or pursuant to any applicable statute, to cancel the Note secured by this Deed of Trust (which is delivered to you together with this Deed of Trust), and to reconvey, without warranty, to the parties designated by the terms of this Deed of Trust, the estate now held by you under this Deed of Trust. Please mail the reconveyance and Related Documents to:

_____.

Date: _____    Beneficiary: _____

By: _____

Its: _____

LASER PRO Lending, Ver. 5.39.00.008 Copr. Harland Financial Solutions, Inc. 1997, 2008.  All Rights Reserved.
- CA L:\NOTE\CFI\LPL\G01.FC TR-2769 PR-14

# EXHIBIT "A"                                      **193**

Property Address(es):                    2483 and 2487 Kettner Blvd.,
                                         San Diego, CA 92101

Assessor's Parcel Numbers:               533-630-03-00; 533-630-02-00

Legal Description:

PARCEL A:

LOTS 2 AND 3 OF WEST LAUREL STUDIOS, IN THE CITY OF SAN DIEGO, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 15620(TENTATIVE MAP NO. 377076) FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAID SAN DIEGO COUNTY, SEPTEMBER 21, 2007.

PARCEL B:

A PRIVATE ACCESS AND UTILITIES EASEMENT OVER, UNDER, ALONG AND ACROSS THE FOLLOWING DESCRIBED PROPERTY:

THAT PORTION OF WEST LAUREL STUDIOS, IN THE CITY OF SAN DIEGO, COUNTY OF SANDIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 15620 (TENTATIVE MAP NO. 377076), FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAID SAN DIEGO COUNTY, SEPTEMBER 21, 2007, SHOWN ON SAID MAP AS "PRIVATE ACCESS AND UTILITY EASEMENT" AND MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT MOST SOUTHERLY CORNER OF LOT 5 OF MAP NO. 15620, ALSO BEING A POINT ON THE EASTERLY RIGHT OF WAY LINE OF KETTNER BOULEVARD; THENCE ALONG SAID RIGHT OF WAY LINE NORTH 19° 43' 43" WEST, 5.00 FEET; THENCE NORTH 70° 17' 49" WEST; 38.21 FEET; THENCE NORTH 19° 42' 08" WEST, 20.10 FEET; THENCE SOUTH 70° 16' 47" WEST, 1.04 FEET; THENCE NORTH 20° 00' 54"WEST, 53.68 FEET; THENCE NORTH 70° 18' 28" EAST, 15.07 FEET; THENCE NORTH 19° 43' 13" WEST, 21.36 FEET TO A POINT ON THE NORTHERLY LOT LINE OF LOT 10, ALSO BEING A POINT ON THE SOUTHERLY RIGHT OF WAY LINE OF LAUREL STREET; THENCE EASTERLY ALONG SAID SOUTHERLY RIGHT OF WAY LINE NORTH 70° 24' 05" EAST, 20.01 FEET; THENCE LEAVING SAID RIGHT OF WAY LINE SOUTH 19° 42' 11" EAST, 18.25 FEET; THENCE NORTH 70° 12' 11" WEST, 3.33 FEET; THENCE SOUTH 19° 42' 11" EAST, 18.25 FEET; THENCE NORTH 70°24'05" WEST, 4.67 FEET; THENCE NORTH 19° 42' 20" WEST, 18.25 FEET; THENCE SOUTH 70° 29' 14" WEST, 4.67 FEET; THENCE SOUTH 19° 38' 53" EAST, 23.38 FEET; THENCE SOUTH 70° 16' 47" WEST, 8.00 FEET; THENCE SOUTH 19°42' 07" EAST, 11.33 FEET; THENCE SOUTH 70° 16' 47" WEST, 8.66 FEET; THENCE SOUTH 19° 42'07" EAST, 24.17 FEET TO THE SOUTH LINE OF LOT 8; THENCE SOUTH 19° 42' 07" EAST, 19.29 FEET TO THE SOUTH LINE OF LOT 7; THENCE SOUTH 70° 16' 10" WEST, 24.16 FEET; THENCE SOUTH 19° 43' 13" EAST, 21.90 FEET TO A POINT ON THE SOUTHERLY LOT LINE OF SAID LOT 5; THENCE WESTERLY ALONG SAID SOUTHERLY LOT LINE SOUTH 70° 22' 33" WEST 50.21 FEET TO THE POINT OF BEGINNING.

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $750,000.00 | 05-02-2008 | 05-05-2009 | 205037 | 510 / 055 | 11709 | BJ | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "*****" has been omitted due to text length limitations.

**Borrower:** Panoche Valley, LLC
P. O. Box 538
Fallbrook, CA 92088

**Lender:** Preferred Bank
601 South Figueroa Street; 29th Floor
Los Angeles, CA 90017

**Principal Amount: $750,000.00    Initial Rate: 7.000%                           Date of Note: May 2, 2008**

**PROMISE TO PAY.** Panoche Valley, LLC ("Borrower") promises to pay to Preferred Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Seven Hundred Fifty Thousand & 00/100 Dollars ($750,000.00), together with interest on the unpaid principal balance from May 2, 2008, until paid in full.

**PAYMENT.** Borrower will pay this loan in one principal payment of $750,000.00 plus interest on May 5, 2009. This payment due on May 5, 2009, will be for all principal and all accrued interest not yet paid. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning June 5, 2008, with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an index which is Lender's Prime Rate (the "Index"). This is the rate Lender charges, or would charge, on 90-day unsecured loans to the most creditworthy corporate customers. This rate may or may not be the lowest rate available from Lender at any given time. Lender will tell Borrower the current index rate upon Borrower's request. The interest rate change will not occur more often than each Day. Borrower understands that Lender may make loans based on other rates as well. **The Index currently is 5.250%.** The interest rate to be applied to the unpaid principal balance during this Note will be at a rate of 1.500 percentage points over the Index, adjusted if necessary for any minimum and maximum rate limitations described below, resulting in an initial rate of 7.000%. **NOTICE:** Under no circumstances will the interest rate on this Note be less than 7.000% or more than the maximum rate allowed by applicable law.

**PREPAYMENT; MINIMUM INTEREST CHARGE.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. In any event, even upon full prepayment of this Note, Borrower understands that Lender is entitled to a minimum interest charge of **$200.00**. Other than Borrower's obligation to pay any minimum interest charge, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Preferred Bank, 601 South Figueroa Street Los Angeles, CA 90017.

**LATE CHARGE.** If a payment is 11 days or more late, Borrower will be charged **5.000%** of the unpaid portion of the regularly scheduled payment.

**INTEREST AFTER DEFAULT.** Upon default, the interest rate on this Note shall, if permitted under applicable law, immediately increase by adding a 8.000 percentage point margin ("Default Rate Margin"). The Default Rate Margin shall also apply to each succeeding interest rate change that would have applied had there been no default.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with any loan.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after receiving written notice from Lender demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW. This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of California.**

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Los Angeles County, State of California.

**COLLATERAL.** Borrower acknowledges this Note is secured by the following collateral described in the security instruments listed herein:

(A) A Deed of Trust dated May 2, 2008, to a trustee in favor of Lender on real property located in San Diego County, State of California. That agreement contains the following due on sale provision: Lender may, at Lender's option, declare immediately due and payable all sums secured

3

Pg 1

# PROMISSORY NOTE
## (Continued)

by the Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Borrower is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Borrower. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

(B) an Assignment of All Rents to Lender on real property located in San Diego County, State of California.

(C) collateral described in a Commercial Security Agreement dated May 2, 2008.

**BUSINESS LOAN AGREEMENT.** Reference is hereby made to that certain Business Loan Agreement of even date for additional terms and conditions.

**SUPPORTING DOCUMENTS.** This loan is supported by a Commercial Guaranty of even date.

**EXTENSION.** Borrower shall have an option to extend the Maturity Date of this Note for six months to November 05, 2009, subject to Borrower satisfying each and every one of the following terms and conditions: (A) Borrower is not in default under the terms of this Note, the Business Loan Agreement of even date or any of the Related Documents (as defined in the Business Loan Agreement); (B) Borrower shall provide Lender a written notice of its election to extend the maturity date of the Note no sooner than 45 days nor less than 30 days prior to the maturity date; (C) Prior to the extension of the maturity date, Borrower shall pay Lender an extension fee equal to one quarter of one percent (0.25%) of the outstanding principal balance on this Note; (D) If required by Lender, Borrower and any guarantor of the obligations of Borrower to Lender under this Note, the Loan Agreement or any of the Related Documents shall execute a modification and/or extension agreement in form and content satisfactory to Lender, in Lender's sole opinion and judgment, extending the maturity date of this Note; and (E) Prior to the extension, Borrower shall deposit with Lender an amount sufficient to pay interest on the unpaid principal balance of this Note during the extension period ("Interest Reserve"), which determination shall be made by Lender in its sole and absolute opinion and judgment.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive any applicable statute of limitations, presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

PANOCHE VALLEY, LLC

By: _____
Ray Gray, Manager of Panoche Valley, LLC

LASER PRO Lending, Ver. 5.39.00.006 Copr. Harland Financial Solutions, Inc. 1997, 2008. All Rights Reserved. - CA  L:\NOTE\CRFALPL\D33.FC  TR-2769  PR-14

3



**FIDELITY NATIONAL TITLE COMPANY**

DOC # 2009-0710979

RECORDING REQUESTED BY AND
WHEN RECORDED MAIL TO:

Preferred Bank
601 S. Figueroa Street, 29th Floor
Los Angeles, CA 90017
Attention: Note Department

DEC 24, 2009    8:00 AM
OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE
DAVID L. BUTLER, COUNTY RECORDER
FEES:        24.00    WAYS:        2
                                    DA:        1

**PAGES:    2**



628839-NP            SPACE ABOVE THIS LINE FOR RECORDER'S USE

**2734**

## ASSIGNMENT OF DEED OF TRUST AND OTHER LOAN DOCUMENTS

**THIS ASSIGNMENT OF DEED OF TRUST AND OTHER LOAN DOCUMENTS** (this "Assignment") is made and entered into as of December 23, 2009 by **PREFERRED BANK**, a California corporation ("Assignor"), in favor of **LIBERTY ASSET MANAGEMENT CORPORATION**, a California corporation ("Assignee").

### WITNESSETH

WHEREAS, Assignor is the present legal and equitable owner and holder of that certain Promissory Note dated as of May 2, 2008 executed and delivered by **PANOCHE VALLEY, LLC**, a California limited liability company ("Borrower"), and made payable to the order of Assignor, in the stated principal amount of Seven Hundred Fifty Thousand Dollars ($750,000.00) (as the same may have been modified, the "Note") pursuant to a Business Loan Agreement of even date therewith made by and between Assignor, as Lender and Borrower (as the same may have been modified, the "Loan Agreement");

WHEREAS, Borrower's obligations under the Loan Agreement, the Note, and the Related Documents (as defined in the Loan Agreement and, collectively, the "Loan Documents") (i) are secured by, among other security, (a) the certain Deed of Trust dated as of May 2, 2008 and recorded May 21, 2008 in the Official Records of San Diego County, California as Instrument No. 2008-0272688 made by Borrower as Trustor naming Preferred Bank, as Beneficiary (the "Deed of Trust"), (b) the certain Assignment of Rents dated as of May 2, 2008 and recorded May 21, 2008 in the Official Records of San Diego County, California as Instrument No. 2008-0272689 made by Borrower in favor of such beneficiary (the "Assignment of Rents"), and (c) certain Commercial Security Agreements dated May 2, 2005 made by Borrower in favor of Assignor (the "Security Agreement"), and (ii) guaranteed by Tesla Gray pursuant to a certain Commercial Guaranty dated May 2, 2005 (the "Guaranty").

NOW, THEREFORE, in consideration of the premises above set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and agreed, Assignor and Assignee hereby covenant and agree as follows:

1.    Assignment.    Assignor does hereby transfer, assign, grant and convey to Assignee, its successors and assigns, without recourse or warranty, all of the right, title and interest of Assignor in and to the Deed of Trust, the Assignment of Rents, the Loan Agreement,

**2735**

Security Agreement, the Guaranty, and the other Loan Documents, together with the Note and all obligations secured by the Deed of Trust, the Assignment of Rents, and other security, and does hereby grant and delegate to Assignee, its successors and assigns, any and all of the duties and obligations of Assignor thereunder from and after the date hereof.

2. **Governing Law.** This Assignment shall be governed by and construed in accordance with the laws of the State of California.

3. **Successors and Assigns.** This Assignment shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

IN WITNESS WHEREOF, Assignor has executed this Assignment as of the date above first written.

PREFERRED BANK,
a California corporation

By:

Name: Robert Kosof

Title: Exec Vice Pres

STATE OF CALIFORNIA )
                     ) ss
COUNTY OF Los Angeles )

On December 22, 2009, before me, Margaret King, a Notary Public in and for said County and State, personally appeared Robert Kosof who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature(s) on the instrument, the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
NOTARY PUBLIC

MARGARET KING
Commission # 1654512
Notary Public - California
Los Angeles County
My Comm. Expires Mar 27, 2010

2

1059781.1
[7808-107]

4

Pg 2

**JOHN VOZENILEK**
**Attorney at Law**
**19900 Beach Boulevard**
**Suite  C-1**
**Huntington Beach, California  92648**

**Office  (714) 965-1216**                         **Facsimile  (714) 965-1081**

Via email and US Mail
tom@tchlaw.com

March 12, 2010

THOMAS C. NELSON,
Attorney at Law
550 West C Street – Suite 1850
San Diego, California 92101

IN RE:  Panoche Valley, LLC, Debtor   09-19670-PB11

Dear Mr. Nelson;

     I just received a call from Ms. Cho from Liberty Asset Management, Inc. whom I sent to attend the Status Conference on the above-described case.  Ms. Cho told me that  you represented to the Court,  that based on your telephone conversation with me, you thought that Liberty would most likely not file a motion for relief from stay.  In our conversation on March 8, 2010 I told you that we will hold off on filing our motion providing that you send me a copy of the escrow instructions for the sale of the Debtor's property so that I could verify the legitimacy of the transaction and determine that escrow would be in a position to close by the end of March as you had told me.

     You will recall that we had our first phone conversation in the beginning of January 2010 at which time you told me that one of the properties on which my Client has a deed of trust is in escrow and that the escrow was supposed to close in approximately 30 days.  In the month of February I left several phone messages for you but none of them was returned.  On March 8, 2010 you told me that you had been ill and requested a copy of the assignment of the deed of trust to Liberty.  You said that once you received the assignment you would forward the escrow instructions to me.  Even though the assignment is a matter of public record I emailed you the assignment on March 8, 2010 and you acknowledged receipt of same.  As of this date, however, I have received no information about your Client's alleged escrow transaction.

     My reason for not filing a motion was to save both sides unnecessary attorney's fees and costs since the motion would be heard some time in April and by that time, based on your representation, the property was to have been sold.  I hope, however, that you understand that our cooperation cannot continue if it is not reciprocated by you.  I have not been involved in a case

5

Pg 1

with you prior to this one therefore don't know whether I should take you at your word or not. Based on the fact that no escrow documents regarding the sale of the property have been provided to me, that your Client didn't attend the 341Hearing and since no attempt has been made by your Client to make post petition payments of at least interest, I have serious doubts about your Client's intentions.   If I do not receive a copy of the escrow instructions by March 17, 2010  you will leave me with other alternative but to file the motion.  The escrow instructions may be emailed to me directly from the escrow at:   attorneyjohnv@yahoo.com.

Sincerely,

JOHN VOZENILEK

JV/sb

5

Pg 2