**Thomas C. Nelson  SBN 82506**
484 Prospect Street
La Jolla, California 92037
Telephone:  858.875.5092
Fax:        858.946.0480
tom@tcnlaw.com

Attorney for Debtor Panoche Valley, LLC.

```
✓____FILED
 ____ENTERED
 ____LODGED
 ____RECEIVED

AUG 2 7 2010

CLERK, U.S. BANKRUPTCY COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                        DEPUTY
```

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF CALIFORNIA

In Re:

PANOCHE VALLEY, LLC,
A limited liability company

Debtor in Possession.

)
)
) Case No. 09-19670-PB11
)
) Chapter 11
)
) DEBTOR'S MOTION TO SELL
) PROPERTIES FREE AND CLEAR OF
) LIENS
)
)
) Judge:      Hon. Peter W. Bowie
) Date:
) Time:
) Courtroom:  Four (Room 328)
)

### INTRODUCTION

This motion addresses the Debtor's two commercial properties located at 2483 Kettner Blvd., San Diego, CA (the "2483 Property") and 2487 Kettner Blvd., San Diego, CA 92101 (the "2487 Property").

The Debtor has entered into an agreement, subject to this Court's approval, to sell the 2483 Property to Mr. Jorge A. Chavez Echeverria ("Mr. Chavez") for the total price of seven hundred fifty thousand dollars ($750,000.00).  A true and accurate copy of the Real Estate Purchase Contract and Receipt for Deposit is attached hereto as Exhibit 1 and incorporated herein.  A true and accurate copy of the Escrow Instructions to Fidelity National Title are attached hereto as Exhibit 2 and incorporated herein. The essential terms of the deal are:

| | |
|---|---|
| Purchase Price: | $750,000.00 |
| Down Payment: | 5,000.00 |
| New 1st Trust Deed | 310,000.00 |
| Seller Carry Back 2nd Trust Deed: | 435,000.00 |

Mr. Chavez has obtained a loan commitment through Triton Equities for a loan in the amount of $310,000.00, a true and accurate copy of which is attached hereto as Exhibit 3 and incorporated herein. All loan contingencies have been satisfied. The $435,000.00 promissory note being taken back by the Debtor, a true and accurate copy of which is attached hereto as Exhibit 4 and incorporated herein, carries an interest rate of four percent (4%) per year, with monthly payments (interest only) of $1,450.00 and is all due and payable in one (1) year.

The Debtor has entered into an agreement, subject to this Court's approval, to sell the 2487 Property to Mr. Matthew Pirvul and Mrs. Melinda Pirvul (the "Pirvuls") for the total price of six hundred fifty thousand dollars ($650,000.00). A true and accurate copy of the Commercial Property Purchase Agreement and Joint Escrow Instructions is attached hereto as Exhibit 5 and incorporated herein. A true and accurate copy of the Escrow Instructions to Fidelity National Title are attached hereto as Exhibit 6 and incorporated herein. The essential terms of the deal are:

| | |
|---|---|
| Purchase Price: | $650,000.00 |
| Down Payment: | 260,000.00 (stock – see below) |
| New 1st Trust Deed | 340,000.00 |
| Seller Carry Back 2nd Trust Deed: | 50,000.00 |

The Pirvuls have obtained a loan commitment through Triton Equities for a loan in the amount of $340,000.00, a true and accurate copy of which is attached hereto as Exhibit 7 and incorporated herein. All loan contingencies have been satisfied. The $50,000.00 promissory note being taken back by the Debtor, a true and accurate copy of which is attached hereto as Exhibit 8 and incorporated herein, carries an interest rate of six and one-half percent (6.5%) per year, with monthly payments (interest only) of $270.00 and is all due and payable in one (1) year.

1    The $260,000.00 down payment being made being made by the Pirvuls is in the form of

2    80,000 shares of common stock of Lenco Mobile, Inc. ("Lenco"), a publicly-traded company, at

3    an agreed value of $3.25 per share. Lenco shares have traded as high as $6.00 recently. The

4    stock closed at $4.70 per share on August 18, 2010. On August 19, 2010, the high was $4.50 per

5    share and the low (closing price) was $4.00 per share. A true and accurate copy of a printout of

6    report I obtained on Lenco from Businessweek.com is attached hereto as Exhibit 9 and

7    incorporated herein. The stock is restricted from being sold until November 2, 2010. After that,

8    the stock is unrestricted and can be sold on the open market. The average trading volume of the

9    stock, according to the Businessweek.com report attached as Exhibit 9, is 14,200 shares per day.

10    Both sales and the related financing are non-contingent, except for approval by this

11    Court, and can close upon recordation of an order approving the sales.

12    **LEGAL ARGUMENT**

13    1.    *The Court May Order The Sale Of Property Free And Clear Of Liens If The*

14    *Consideration Given Is Equal To Or Greater Than The Value Of The Property Being Sold.*

15    The Court is authorized under 11 U.S.C. §363(f)(3) to order the sale of property free and

16    clear of liens if the transaction results in the lienholder being given a "lien [on the proceeds] and

17    the price at which such property is to be sold is greater than the aggregate value of all liens on

18    such property."

19    2.    *The Sales Proposed By The Debtor Will Yield Consideration Greater Than The*

20    *Value Of The Lien Held By Liberty.*

21    The total value of the two proposed sales is $1,400,000.00. The sale of the 2483 Property

22    to Mr. Chavez will generate approximately $261,595.28 in cash at closing. The sale of the 2487

23    Property to the Pirvuls will generate approximately $270,878.64 in cash at closing, for a total of

24    $532,473.92 in available cash at closing.

25    The two properties are subject to a loan secured by a single blank first deed of trust

26    originally given Preferred Bank and which has since been acquired by Liberty Asset

27    Management Corporation ("Liberty"). According to the Motion for Relief from Stay filed by

28    Liberty, the outstanding balance of that loan is approximately $800,000.00. The Debtor does not

1  agree with that amount, but accepts it for purposes of this motion. The proposed sales clearly do

2  not generate sufficient cash at closing.   They will, however, deliver value sufficient to provide

3  adequate protection and to satisfy Liberty's loan.

4        The shortfall in cash is $267,526.08, assuming Liberty's demand is accurate. The

5  original principal balance of the loan Liberty acquired is $650,000.00; the balance is interest,

6  fees and costs. If the motion is granted, Liberty will be paid approximately 82% of its principal

7  and approximately 66.5% of its overall demand. It will retain a security interest in the notes

8  carried back by the Debtor to the two properties. Liberty will also have a security interest in the

9  Lenco stock being conveyed by the Pirvuls, which at current trading value is worth about

10  $320,000.00. Effectively, Liberty retains an interest in the properties by the granting of the

11  motion, subject only to the amount of cash it is receiving, and gains security in an additional

12  $320,000.00 of collateral.

13        The Debtor proposes to pay the remaining amount due to Liberty from proceeds from

14  selling the Lenco stock. A conservative approach is to sell at a level that is about ten percent

15  (10%) of the average daily volume (which has been 14,200 shares) so as not to adversely affect

16  the market value of the stock. Assuming an average price of $4.00 per share, the Debtor will be

17  able to repay Liberty about $113,600.00 per month (1,420 shares per day x $4.00 per share x 20

18  days). At that rate, the Debtor will be able to repay Liberty in full in less than two and one-half

19  months. The remaining equity will be available to repay unsecured creditors in full.

20  **CONCLUSION**

21        The Debtor respectfully requests that the Court authorize the sale of the two properties

22  free and clear of Liberty's lien since Liberty will be paid over two-thirds of its claim in cash at

23  closing and will retain a security interest in the resulting promissory notes secured by the

24  properties and, in addition, publicly traded stock, the total value of which is substantially in

25  excess of the remainder of Liberty's claim.

26  Dated: August 26, 2010

27  Thomas C. Nelson Attorney for the Debtor

28

# EXHIBIT 1

**REAL ESTATE PURCHASE CONTRACT AND RECEIPT FOR DEPOSIT**

ESCROW NO. 4323290T-S

RECEIVED FROM JORGE A CHAVEZ    DATE JUNE 30, 2010

(Make Deed To:) JC PROPERTIES

ADDRESS 750 FIR STREET #603 SAN DIEGO, CA 9210 PHONE 619-764-5094
FIVE THOUSAND DOLLARS                                        DOLLARS
(CHECKS BEING DEPOSITED SUBJECT TO COLLECTION - ANY COSTS OR ATTORNEY FEES - INCURRED FOR COLLECTION SHALL BE AT THE EXPENSE OF BUYER)

AS A DEPOSIT ON ACCOUNT OF PURCHASE PRICE OF THE FOLLOWING DESCRIBED PROPERTY, SITUATED IN 2483 KETTNER
BLVD, SAN DIEGO, CA 92101                        , CALIFORNIA SAN DIEGO COUNTY

SUBJECT ONLY TO ANY EXISTING RESTRICTIONS, RESERVATIONS, ZONING ORDINANCES OR OTHER GOVERNMENTAL REGULATIONS

TOTAL PURCHASE PRICE IS $750,000.00 /SEVEN HUNDRED FIFTY THOUSAND 00/DOLLARS;

AND THE BALANCE IS TO BE PAID WITHIN COE DAYS FROM DATE OF ACCEPTANCE BY SELLER AS FOLLOWS:

NEW FIRST TRUST DEED FROM A LENDER IN THE
AMOUNT OF $450,000.00. TERMS TO BE DETERMINED FROM A
LENDER DURING ESCROW. APPROX 8% AMORT OVER 30 YEARS

SECOND TRUST DEED TO BE CARRIED BY SELLER IN
THE AMOUNT OF $295,000.00.

ALL ESCROW FEES TO BE PAID BY BUYER AND SELLER
TO WHAT IS CUSTOMARY IN SAN DIEGO COUNTY

SELLER AGREES TO RENT SAID PROPERTY UNTIL COE
RENTAL AMOUNT TO BE $3,500.00/MONTH COMMENCING ON
JULY 1st 2010. MONTH TO MONTH UNTIL COE AT A RATE OF $3,500/NNN

AND IT IS HEREBY AGREED:
That in the event said Buyer shall fail to pay the balance of said purchase price or complete said purchase as herein provided, the amounts paid hereon shall, at the option of the Seller, be retained as liquidated and agreed damages.

Evidence of title shall be a California Land Title Association standard coverage form policy of title insurance issued through
FIDELITY NATIONAL TITLE To be paid for by CUSTOMARY
If Seller is unable to convey a marketable title, except as herein provided, within three months after acceptance hereof by Seller, or if the improvements on said property be destroyed or materially damaged prior to transfer of title or delivery of agreement of sale, then upon the demand of Buyer, said deposit and all other sums paid by Buyer shall be returned to Buyer, and this agreement as between Buyer and Seller shall be of no further effect, and Seller thereupon shall become obligated to pay all expenses incurred in connection with examination of title.

That existing insurance policies are to be
{ INDICATE }   ☐ Transferred      New policies, if required in escrow, are to be _____
{            }
{ BY X }       ☐ Cancelled        deposited by _____

Possession of said property to be delivered to Buyer on close of escrow (  ) or _____ (  )

That current taxes, rents and insurance premiums, if transferred, shall be pro rated from date of closing transaction (  ) or _____
That any sewer, sanitation, or improvement assessments are to be assumed by Buyer ☐   Paid in Full By Seller ☐
Said property is sold subject to approval of Seller. The agent is granted the right for 10 days to obtain said approval.
Time is the essence of this contract, but the time for any act required hereunder may for sufficient cause be extended not longer than thirty days by the agent signing this contract.

N/A
N/A                                                              _____ Agent

I agree to purchase the above described property on the terms and conditions herein stated, and acknowledge a copy of this deposit receipt issued in quadruplicate.

_____ Buyer

I (or we) agree to sell and convey the above described property on the terms and conditions herein stated, and agree to pay the above signed agent as commission _____ per cent of above purchase price, or one-half the net deposit in case same is forfeited by Buyer, provided same shall not exceed the full amount of the commission. Acknowledgment is hereby made of a copy of this deposit receipt issued in quadruplicate.

Seller's Address 2483 KETTNER BLVD    Date of Acceptance JUNE 30, 2010
SD CA 92101                           PANACHE VALLEY LLC              Seller
Phone 858-752-2978              and _____ MANAGER    Seller
It will expedite closing if owner's deed and fire insurance policy and statement of rents, if any, are promptly delivered to Title Co.

# EXHIBIT 2

# Fidelity National Title Company

760 Garden View Court #100   Encinitas, CA  92024
(760) 479-2757   FAX (760) 479-2752

## AS A MATTER OF CLARIFICATION

To:               Fidelity National Title Company
Date:             August 19, 2010
Escrow No:        4323290-TS
Property Address:  2483 Kettner Boulevard, San Diego, CA  92101

The instructions in this escrow are hereby modified, amended and/or supplemented in the following particulars only:

| | |
|---|---|
| Buyer(s) will deposit with escrow an initial deposit in the amount of . . . . . . $ | 5,000.00 |
| Buyer will execute and deliver a new First conventional Deed of Trust | |
| in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ | 310,000.00 |
| Buyer will execute and deliver a new Second seller carry back Deed of Trust | |
| in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ | 435,000.00 |
| TOTAL CONSIDERATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ | 750,000.00 |

1.  **Approval of Legal Description for Subject Property:**  Seller(s) signature(s) on the conveying Grant Deed, and Buyer(s) approval of the Preliminary Report, shall be deemed as each party's approval of the legal description contained therein as the exact description for the subject property of this escrow and Escrow Holder may rely upon such approval in processing this transaction.
    SEE EXHIBIT ONE ATTACHED HERETO AND MADE A PART HEREOF

2.  **Policy of Title Insurance:**  An CLTA Policy of Title Insurance will be issued by Fidelity National Title Insurance Company at the close of escrow.

3.  **Purchase Price:**  The purchase price for the subject property is $750,000.00.

4.  **Close of Escrow:**  Close of escrow to be on or before August 27, 2010, or thereafter, unless revoked by written demand on you by the undersigned.

5.  **Acceptance Date:**  Parties agree that the acceptance has been made outside of escrow.

6.  **REAL ESTATE CONTRACT IN ESCROW:**  The parties hereto acknowledge that they have previously entered into a Standard Contract for Purchase and Sale of Real Estate (Deposit Receipt) with respect to this transaction.  Except as set forth in these Escrow Instructions, said instructions are not intended to modify, amend, supersede or in any way change said Contract. Any matters which are not expressly addressed in these instructions shall continue in full force and effect.  Escrow Holder is not to be concerned with the terms and provisions contained in said Contract, notwithstanding any knowledge by Escrow Holder of said Contract or the deposit of said Contract into escrow, and is bound solely by the provisions of these Instructions.

7.  **FOR SALE BY OWNER:** Buyer and seller acknowledge neither is represented by a real estate agent in this transaction.  Buyer and seller are aware certain transfer disclosures are required. Buyer and seller will not look to escrow holder for advise regarding any disclosures.

8.  **TERMITE REPORT NOT REQUIRED:**  Buyer is accepting the property herein referred to without the requirement of a structural pest control inspection or report.

9.  **HOME WARRANTY WAIVER:**  All parties acknowledge that it is agreed that there will be no Home Warranty provided or paid for through escrow and Escrow Holder is not to be of any concern with same.

10. **ZONE DISCLOSURE:**  Zone disclosure to be handled outside of escrow between buyer and seller.

**GENERAL INSTRUCTIONS:**

1.  Seller is aware that interest on the existing loan(s) does not stop accruing at close of escrow, but continues until the actual day of receipt of the payoff by Lender.

*Continued on following page*                                                Initials: J.C.

Date:        August 19, 2010                                                    Page 2
Escrow No:   4323290-TS

Seller is aware that interest will accrue through weekends or holidays.

Seller is aware he/she/they are responsible for payment of all of such interest and will indemnify and hold Escrow Holder harmless in connection with the payment of such interest.

2.   The undersigned Buyer hands you herewith Preliminary Change of Ownership Report as provided for in Section 480.34 of the Revenue and Taxation Code, State of California which you are to cause to be filed concurrently with the Deed in our favor.  If form is rejected by the County, a surcharge may be imposed by said County and is to be paid by buyer herein.

3.   The undersigned hereby authorize and instruct Escrow Holder to charge each party to the escrow for their respective express and/or special mail handling/courier fees. Unless specified in writing by the undersigned, Escrow Holder is authorized to select special mail/delivery or courier service to be used.

*Continued on following page*

Initials: _J. C._

Date:       August 19, 2010
Escrow No:  4323290-TS                                                    Page 3

# GENERAL PROVISIONS

**1. DEPOSIT OF FUNDS**

The law dealing with the disbursement of funds requires that all funds be available for withdrawal as a matter of right by the title entity's escrow and/or sub escrow account prior to disbursement of any funds. Only cash or wire transferred funds can be given immediate availability upon deposit. Cashier's checks, teller's checks and Certified checks may be available one business day after deposit. All other funds such as personal, corporate or partnership checks and drafts are subject to mandatory holding periods which may cause material delays in disbursement of funds in this escrow. In order to avoid delays, all fundings should be in wire transfer. Outgoing wire transfers will not be authorized until confirmation of the respective incoming wire transfer or of availability of deposited checks.

Deposit of funds into general escrow account unless instructed otherwise. You may instruct Escrow Holder to deposit your funds into an interest bearing account by signing and returning the "Escrow Instructions - Interest Bearing Account" which has been provided to you. If you do not so instruct us, then all funds received in this escrow shall be deposited with other escrow funds in one or more general escrow trust accounts, which include both non-interest-bearing demand accounts and other depository accounts of Escrow Holder, in any state or nations' bank or savings and loan association insured by the Federal Deposit Insurance Corporation (the "depository institutions") and may be transferred to other such escrow trust accounts of Escrow Holder or one of its affiliates, either within or outside the State of California. A general escrow trust account is restricted and protected against claims by third parties and creditors of Escrow Holder and its affiliates.

Receipt of benefits by Escrow Holder and affiliates. The parties to this escrow acknowledge that the maintenance of such general escrow trust accounts with some depository institutions may result in Escrow Holder or its affiliates being provided with an array of bank services, accommodations or other benefits by the depository institution. Some or all of these benefits may be considered interest due you under California Insurance Code Section 12413.5. Escrow Holder or its affiliates also may elect to enter into other business transactions with or obtain loans for investment or other purposes from the depository institution. All such services, accommodations, and other benefits shall accrue to Escrow Holder or its affiliates and Escrow Holder shall have no obligation to account to the parties to this escrow for the value of such services, accommodations, interest or other benefits.

Said funds will not earn interest unless the instructions otherwise specifically state that funds shall be deposited in an interest-bearing account. All disbursements shall be made by check of Fidelity National Title Company. The principals to this escrow are hereby notified that the funds deposited herein are insured only to the limit provided by the Federal Deposit Insurance Corporation. Any instruction for bank wire will provide reasonable time or notice for Escrow Holder's compliance with such instruction. Escrow Holder's sole duty and responsibility shall be to place said wire transfer instructions with its wiring bank upon confirmation of (1) satisfaction of conditions precedent or (2) document recordation at close of escrow. Escrow Holder will NOT be held responsible for lost interest due to wire delays caused by any bank or the Federal Reserve System, and recommends that all parties make themselves aware of banking regulations with regard to placement of wires.

In the event there is insufficient time to place a wire upon any such confirmation or the wires have closed for the day, the parties agree to provide written instructions for an alternative method of disbursement. **WITHOUT AN ALTERNATIVE DISBURSEMENT INSTRUCTION, FUNDS WILL BE HELD IN TRUST IN A NON-INTEREST BEARING ACCOUNT UNTIL THE NEXT OPPORTUNITY FOR WIRE PLACEMENT.**

**2. PRORATIONS AND ADJUSTMENTS**

All prorations and/or adjustments called for in this escrow are to be made on the basis of a thirty (30) day month unless otherwise instructed in writing. You are to use information contained on last available tax statement, rental statement as provided by the Seller, beneficiary's statement; and fire insurance policy delivered into escrow for the prorations provided for herein.

**3. SUPPLEMENTAL TAXES**

The within described property may be subject to supplemental real property taxes due to the change of ownership taking place through this escrow. Any supplemental real property taxes arising as a result of the transfer of the property to Buyer shall be the sole responsibility of Buyer and any supplemental real property taxes arising prior to the closing date shall be the sole responsibility of the Seller. TAX BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER.

**4. UTILITIES/POSSESSION**

Transfer of utilities and possession of the premises are to be settled by the parties directly and outside escrow.

**5. PREPARATION AND RECORDATION OF INSTRUMENTS**

Escrow Holder is authorized to prepare, obtain, record and deliver the necessary instruments to carry out the terms and conditions of this escrow and to order the policy of title insurance to be issued at close of escrow as called for in these instructions. Close of escrow shall mean the date instruments are recorded.

**6. AUTHORIZATION TO FURNISH COPIES**

You are authorized to furnish copies of these instructions, supplements, amendments, notices of cancellation and closing statements, to the Real Estate Broker(s) and Lender(s) named in this escrow.

**7. RIGHT OF CANCELLATION**

Any principal instructing you to cancel this escrow shall file notice of cancellation in your office in writing. You shall, within two (2) working days thereafter, deliver, one copy of such notice to each of the other principals at the addresses stated in this escrow. UNLESS WRITTEN OBJECTION TO CANCELLATION IS FILED IN YOUR OFFICE BY A PRINCIPAL WITHIN TEN (10) DAYS AFTER DATE OF SUCH DELIVERY, YOU ARE AUTHORIZED TO COMPLY WITH SUCH NOTICE AND DEMAND PAYMENT OF YOUR CANCELLATION CHARGES. If written objection is filed, you are authorized to hold all money and instruments in this escrow and take no further action until otherwise directed, either by final order of a court of competent jurisdiction, or by the written agreement of the principals' mutual written instructions, or by final order of a court of competent jurisdiction.

**8. PERSONAL PROPERTY**

No examination or insurance as to the amount or payment of personal property taxes is required unless specifically requested.

By signing these General Provisions, the parties to the escrow hereby acknowledge that they are indemnifying the Escrow Holder against any and all matters relating to any "Bulk Sales" requirements, and instruct Escrow Agent to proceed with the closing of escrow without any consideration of matter of any nature whatsoever regarding "Bulk Sales" being handled through escrow.

**9. RIGHT OF RESIGNATION**

Escrow Holder has the right to resign upon ten (10) days written notice delivered to the principals herein. If such right is exercised, all funds and documents shall be returned to the party who deposited them and Escrow Holder shall have no liability hereunder.

**10. AUTHORIZATION TO EXECUTE ASSIGNMENT OF HAZARD INSURANCE POLICIES**

Either Buyer, Seller and/or Lender may hand you the insurance agent's name and insurance policy information, and request to execute, on behalf of the principals hereto, form assignments of interest in any insurance policy (other than title insurance) called for in this escrow, forward assignment and policy to the insurance agent, requesting that the insurer consent to such transfer and/or attach a loss payable clause and/or such other endorsements as may be required, and forward such policy(s) to the principals entitled thereto. It is not your responsibility to verify the information handed you or the assignability of said insurance. Your sole duty is to forward said request to insurance agent at close of escrow.

Further, there shall be no responsibility upon the part of Escrow Holder to renew hazard insurance policy(s) upon expiration or otherwise keep it in force either during or subsequent to the close of escrow. Cancellation of any existing hazard insurance policies is to be handled directly by the principals, and outside of escrow.

**11. ACTION IN INTERPLEADER**

The principals hereto expressly agree that you, as Escrow Holder, have the absolute right at your election to file an action in interpleader requiring the principals to answer and litigate their several claims and rights among themselves and you are authorized to deposit with the clerk of the court all documents and funds held in this escrow. In the event such action is filed, the principals jointly and severally agree to pay your cancellation charges and costs, expenses and reasonable attorney's fees which you are required to expend or incur in such interpleader action, the amount thereof to be fixed and judgment therefor to be rendered by the court. Upon the filing of such action, you shall thereupon be fully released and discharged from all obligations imposed by the terms of this escrow or otherwise.

**12. TERMINATION OF AGENCY OBLIGATION**

If there is no action taken on this escrow within six (6) months after the "time limit date" as set forth in the escrow instructions or written extension thereof, your agency obligation shall terminate at your option and all documents, monies or other items held by you shall be returned to the parties depositing same. In the event of cancellation of this escrow, whether it be at the request of any of the principals or otherwise, the fees and charges due Fidelity National Title Company, including expenditures incurred and/or authorized shall be borne equally by the parties hereto (unless otherwise agreed to specifically).

**13. CONFLICTING INSTRUCTIONS**

Upon receipt of any conflicting instructions, you are to take no action in connection with this escrow until non-conflicting instructions are received from all of the principals to this escrow (subject to sections 7, 9, 11 and 12 above).

**14. REIMBURSEMENT ATTORNEY FEES/ESCROW HOLDER**

In the event that a suit is brought by any party or parties to these escrow instructions to which the Escrow Holder is named as a party which results in a judgment in favor of the Escrow Holder and against a principal or principals herein, the principals or principals agree to pay said Escrow Holder all costs, expenses and reasonable attorney's fees which it may expend or incur in said suit, the amount thereof to be fixed and judgment therefore to be rendered by the court in said suit.

**15. DELIVERY/RECEIPT**

Delivery to principals as used in these instructions unless otherwise stated herein, is to be by regular mail, and receipt is determined to be 72 hours after such mailing. All documents, balances and statements due to the undersigned are to be mailed to the address shown herein.

**16. STATE/FEDERAL CODE NOTIFICATIONS**

According to Federal Law, the Seller, when applicable, will be required to complete a sales activity report that will be utilized to generate a 1099 statement to the Internal Revenue Service.

*Continued on following page*

Initials: _J.C._

Date: August 19, 2010
Escrow No: 4323290-TS

Page 4

Pursuant to State Law, prior to the close of escrow, Buyer will provide Escrow Holder with a Preliminary Change of Ownership Report. In the event said report is not handed to Escrow Holder for submission to the County in which subject property is located, upon recording of the Grant Deed, Buyers acknowledge that the applicable fee will be assessed by said County and Escrow Holder shall debit the account of Buyer for same at close of escrow.

**17. NON-RESIDENT ALIEN**

The Foreign Investment in Real Property Tax Act (FIRPTA), Title 26 U.S.C., Section 1445, and the regulations thereunder, provide in part, that a transferee (buyer) of a U.S. real property interest from a foreign person (non-resident alien) must withhold a tax equal to ten percent (10%) of the amount realized on the disposition, report the transaction and remit the withholding to the Internal Revenue Service within twenty (20) days after the transfer. Fidelity National Title Company has not and will not participate in any determination of whether the FIRPTA tax provisions are applicable to the subject transaction, nor act as a Qualified Substitute nor furnish tax advice to any party to the transaction. Fidelity National Title Company is not responsible for determining whether the transaction will qualify for an exception or an exemption and is not responsible for the filing of any tax forms with the Internal Revenue Service as they relate to FIRPTA. Fidelity National Title Company is not the agent for the Buyer for the purposes of receiving and analyzing any evidence or documentation that the Seller in the subject transaction is a U.S. citizen or resident alien. The Buyer is advised they must independently make a determination of whether the contemplated transaction is taxable or non-taxable and the applicability of the withholding requirement to the subject transaction, and should seek the advice of their attorney or accountant. Fidelity National Title Company is not responsible for the payment of this tax and/or penalty and/or interest incurred in connection therewith and such taxes are not a matter covered by the Owner's Policy of Title Insurance to be issued to the Buyer. The Buyer is advised they bear full responsibility for compliance with the tax withholding requirement if applicable and/or for payment of any tax, interest, penalties and/or other expenses that may be due on the subject transaction.

**18. ENCUMBRANCES**

Escrow Holder is to act upon any statements furnished by a lienholder or his agent without liability or responsibility for the accuracy of such statements. Any adjustments necessary because of a discrepancy between the information furnished Escrow Holder and any amount later determined to be correct shall be settled between the parties direct and outside of escrow.

You are authorized, without the need for further approval, to debit my account for any fees and charges that I have agreed to pay in connection with this escrow, and for any amounts that I am obligated to pay to the holder of any lien or encumbrance to establish the title as insured by the policy of title insurance called for in these instructions. If for any reason my account is not debited for such amounts at the time of closing, I agree to pay them immediately upon demand, or to reimburse any other person or entity who has paid them.

**19. ENVIRONMENTAL ISSUES**

Fidelity National Title Company has made no investigation concerning said property as to environmental/toxic waste issues. Any due diligence required or needed to determine environmental impact as to forms of toxification, if applicable, will be done directly and by principals outside of escrow. Fidelity National Title Company is released of any responsibility and/or liability in connection therewith.

**20. USURY**

Escrow Holder is not to be concerned with any questions of usury in any loan or encumbrance involved in the processing of this escrow and is hereby released of any responsibility or liability therefore.

**21. DISCLOSURE**

Escrow Holder is not to disclose facts affecting the property, provided such facts do not prevent compliance with these instructions, does not create any liability or duty in addition to these instructions.

**22. FACSIMILE SIGNATURE**

Escrow Holder is hereby authorized and instructed that, in the event any party utilizes "facsimile" transmitted signed documents or instructions to Escrow Holder, you are to rely on the same for all escrow instruction purposes and the closing of escrow as if they bore original signatures.

**23. CLARIFICATION OF DUTIES**

Fidelity National Title Company serves ONLY as an Escrow Holder in connection with these instructions and cannot give legal advice to any party hereto.

Escrow Holder is not to be held accountable or liable for the sufficiency or correctness as to form, manner of execution, or validity of any instrument deposited in this escrow, nor as to the identity, authority or rights of any person executing the same. Escrow Holder's duties hereunder shall be limited to the proper handling of such money and the proper safekeeping of such instruments, or other documents received by Escrow Holder, and for the disposition of same in accordance with the written instructions accepted by Escrow Holder.

The agency and duties of Escrow Holder commence only upon receipt of copies of these Escrow Instructions executed by all parties.

**24. FUNDS HELD IN ESCROW**

When the company has funds remaining in escrow over 90 days after close of escrow or estimated close of escrow, the Company shall impose a monthly holding fee of $25.00 that is to be charged against the funds held by the Company.

THIS AGREEMENT IN ALL PARTS APPLIES TO, INURES TO THE BENEFIT OF, AND BINDS ALL PARTIES HERETO, THEIR HEIRS, LEGATEES, DEVISEES, ADMINISTRATORS, EXECUTORS, SUCCESSORS AND ASSIGNS, AND WHENEVER THE CONTEXT SO REQUIRES THE MASCULINE GENDER INCLUDES THE FEMININE AND NEUTER, AND THE SINGULAR NUMBER INCLUDES THE PLURAL. THESE INSTRUCTIONS AND ANY OTHER AMENDMENTS MAY BE EXECUTED IN ANY NUMBER OF COUNTERPARTS, EACH OF WHICH SHALL BE CONSIDERED AS AN ORIGINAL AND BE EFFECTIVE AS SUCH.

MY SIGNATURE HERETO CONSTITUTES INSTRUCTION TO ESCROW HOLDER OF ALL TERMS AND CONDITIONS CONTAINED IN THIS AND ALL PRECEDING PAGES AND FURTHER SIGNIFIES THAT I HAVE READ AND UNDERSTAND THESE GENERAL PROVISIONS.

Fidelity National Title Company CONDUCTS ESCROW BUSINESS UNDER CERTIFICATE OF AUTHORITY NO. 305 ISSUED BY THE CALIFORNIA DEPARTMENT OF INSURANCE.

All other terms and conditions remain the same.

Date: _08.20.2010_

Jorge A. Chavez

**Forwarding Address:**

_750 Fir St. — 603_
Street Address

_San Diego CA. 92101_
City, State, Zip

_(619) 764 8894_
Home Phone Number

Date:    August 19, 2010
Escrow No:    4323290-TS

Panoche Valley LLC a California, a Limited Liability Company
By: _____    Date: ___8/19/10___
    Todd Brown

**Forwarding Address:**

_2483 KETTNER BLVD_
Street Address

_SAN DIEGO, CA 92101_
City, State, Zip

_858-752-2978_
Home Phone Number

Escrow No. 4323290-TS
Title Order No. 06006464

# EXHIBIT ONE

Parcel A:

Lot 3 of West Laurel Studios, in the City of San Diego, County of San Diego, State of California, according to Map thereof No. 15620 (tentative Map No. 377076) filed in the office of the County recorder of said San Diego County, September 21, 2007.

Parcel B:

A private access and utilities easement over, under, along and across the following described property:

That portion of West laurel studios, in the City of San Diego, County of San Diego, State of California, according to Map thereof No. 15620 (tentative Map no. 377076), filed in the office of the County recorder of said San Diego County, September 21, 2007, shown on said Map as "private access and utility easement" and more particularly described as follows:

Beginning at most Southerly corner of Lot 5 of Map no. 15620, also being a point on the Easterly right of way line of Kettner Boulevard; thence along said right of way line North 19° 43' 43" West, 5.00 feet; thence North 70° 17' 49" West; 38.21 feet; thence North 19° 42' 08" West, 20.10 feet; thence South 70° 16' 47" West, 1.04 feet; thence North 20° 00' 54"West, 53.68 feet; thence North 70° 18' 28" East, 15.07 feet; thence North 19° 43' 13" West, 21.36 feet to a point on the Northerly Lot line of Lot 10, also being a point on the Southerly right of way line of laurel street; thence Easterly along said Southerly right of way line North 70° 24' 05" East, 20.01 feet; thence leaving said right of way line South 19°42 '11"East, 18.25 feet; thence North 70° 12' 11" West, 3.33 feet; thence South 19°42 '11"East, 18.25 feet; thence North 70°24 '05"West, 4.67 feet; thence North 19° 42' 20" West, 18.25 feet; thence South 70° 29' 14" West, 4.67 feet; thence South 19° 38' 53" East, 23.38 feet; thence South 70° 16' 47" West, 8.00 feet; thence South 19° 42' 07" East, 11.33 feet; thence South 70° 16' 47" West, 8.66 feet; thence South 19° 42' 07" East, 24.17 feet to the South line of Lot 8; thence South 19° 42' 07" East, 19.29 feet to the South line of Lot 7; thence South 70° 16' 10" West, 24.16 feet; thence South 19° 43' 13" East, 21.90 feet to a point on the Southerly Lot line of said Lot 5; thence Westerly along said Southerly Lot line South 70° 22' 33" West, 50.21feet to the point of beginning

**EFFECTIVE JANUARY 1, 2007**
**NOTIFICATION TO BUYER ON DISPOSITION**
**OF CALIFORNIA REAL PROPERTY**

In accordance with Section 18662 of the Revenue and Taxation Code, a buyer may be required to withhold an amount equal to 3 1/3 percent of the sale price or an alternative withholding amount certified by the seller in the case of a disposition of California real property interest by either:

1. A seller who is an individual, trust, estate, or when the disbursement instructions authorize the proceeds to be sent to a financial intermediary of the seller, OR
2. A corporate seller that has no permanent place of business in California immediately after the transfer of title to the California property.

The buyer may become subject to penalty for failure to withhold an amount equal to the greater of 10 percent of the amount required to be withheld or five hundred dollars ($500).

However, notwithstanding any other provision included in the California statutes referenced above, no buyer will be required to withhold any amount or be subject to penalty for failure to withhold if any of the following apply:

1. The sale price of the California real property conveyed does not exceed one hundred thousand dollars ($100,000).
2. The seller executes a written certificate, under the penalty of perjury, certifying that the seller is a corporation with a permanent place of business in California.
3. The seller, who is an individual, trust, estate or a corporation without a permanent place of business in California, executes a written certificate, under the penalty of perjury, of any of the following:
   A. The California real property being conveyed is the seller s or decedent's principal residence (within the meaning of Section 121 of the Internal Revenue Code).
   B. The last use of the property being conveyed was use by the transferor as the transferor's principal residence within the meaning of Section 121 of the Internal Revenue Code.
   C. The California real property being conveyed is or will be exchanged for property of like kind (within the meaning of Section 1031 of the Internal Revenue Code), but only to the extent of the amount of gain not required to be recognized for California income tax purposes under Section 1031 of the Internal Revenue Code.
   D. The California real property has been compulsorily or involuntarily converted (within the meaning of Section 1033 of the Internal Revenue Code) and that the seller intends to acquire property similar or related in service or use so as to be eligible for non recognition of gain for California income tax purposes under Section 1033 of the Internal Revenue Code.
   E. The California real property transaction will result in a loss or net gain not required to be recognized for California income tax purposes.

The seller is subject to penalty for knowingly filing a fraudulent certificate for the purpose of avoiding the withholding requirement.

Fidelity National Financial, Inc.
**Privacy Statement**

Fidelity National Financial, Inc. and its subsidiaries ("FNF") respect the privacy and security of your non-public personal information ("Personal Information") and protecting your Personal Information is one of our top priorities. This Privacy Statement explains FNF's privacy practices, including how we use the Personal Information we receive from you and from other specified sources, and to whom it may be disclosed. FNF follows the privacy practices described in this Privacy Statement and, depending on the business performed, FNF companies may share information as described herein.

**Personal Information Collected**
We may collect Personal Information about you from the following sources:

Information we receive from you on applications or other forms, such as your name, address, social security number, tax identification number, asset information, and income information;

Information we receive from you through our Internet websites, such as your name, address, email address, Internet Protocol address, the website links you used to get to our websites, and your activity while using or reviewing our websites;

Information about your transactions with or services performed by us, our affiliates, or others, such as information concerning your policy, premiums, payment history, information about your home or other real property, information from lenders and other third parties involved in such transaction, account balances, and credit card information; and

Information we receive from consumer or other reporting agencies and publicly recorded documents.

**Disclosure of Personal Information**
We may provide your Personal Information (excluding information we receive from consumer or other credit reporting agencies) to various individuals and companies, as permitted by law, without obtaining your prior authorization. Such laws do not allow consumers to restrict these disclosures. Disclosures may include, without limitation, the following:

To insurance agents, brokers, representatives, support organizations, or others to provide you with services you have requested, and to enable us to detect or prevent criminal activity, fraud, material misrepresentation, or nondisclosure in connection with an insurance transaction;

To third-party contractors or service providers for the purpose of determining your eligibility for an insurance benefit or payment and/or providing you with services you have requested;

To an insurance regulatory authority, or a law enforcement or other governmental authority, in a civil action, in connection with a subpoena or a governmental investigation;

To companies that perform marketing services on our behalf or to other financial institutions with which we have joint marketing agreements and/or

To lenders, lien holders, judgment creditors, or other parties claiming an encumbrance or an interest in title whose claim or interest must be determined, settled, paid or released prior to a title or escrow closing.

We may also disclose your Personal Information to others when we believe, in good faith, that such disclosure is reasonably necessary to comply with the law or to protect the safety of our customers, employees, or property and/or to comply with a judicial proceeding, court order or legal process.

<u>Disclosure to Affiliated Companies</u> - We are permitted by law to share your name, address and facts about your transaction with other FNF companies, such as insurance companies, agents, and other real estate service providers to provide you with services you have requested, for marketing or product development research, or to market products or services to you. We do not, however, disclose information we collect from consumer or credit reporting agencies with our affiliates or others without your consent, in conformity with applicable law, unless such disclosure is otherwise permitted by law.

<u>Disclosure to Nonaffiliated Third Parties</u> - We do not disclose Personal Information about our customers or former customers to nonaffiliated third parties, except as outlined herein or as otherwise permitted by law.

**Confidentiality and Security of Personal Information**
We restrict access to Personal Information about you to those employees who need to know that information to provide products or services to you. We maintain physical, electronic, and procedural safeguards that comply with federal regulations to guard Personal Information.

**Access To Personal Information/**
**Requests for Correction, Amendment, or Deletion of Personal Information**
As required by applicable law, we will afford you the right to access your Personal Information, under certain circumstances to find out to whom your Personal Information has been disclosed, and request correction or deletion of your Personal Information. However, <u>FNF's current policy is to maintain customers' Personal Information for no less than your state's required record retention requirements for the purpose of handling future coverage claims.</u>

For your protection, <u>all requests made under this section must be in writing and must include your notarized signature to establish your identity</u>. Where permitted by law, we may charge a reasonable fee to cover the costs incurred in responding to such requests. Please send requests to:

Chief Privacy Officer
Fidelity National Financial, Inc.
601 Riverside Avenue
Jacksonville, FL  32204

**Changes to this Privacy Statement**
This Privacy Statement may be amended from time to time consistent with applicable privacy laws. When we amend this Privacy Statement, we will post a notice of such changes on our website. The effective date of this Privacy Statement, as stated above, indicates the last time this Privacy Statement was revised or materially changed.

### Notice of Available Discounts

Pursuant to Section 2355.3 in Title 10 of the California Code of Regulations Fidelity National Financial, Inc. and its subsidiaries ("FNF") must deliver a notice of each discount available under our current rate filing along with the delivery of escrow instructions, a preliminary report or commitment. Please be aware that the provision of this notice does not constitute a waiver of the consumer's right to be charged the filed rate. As such, your transaction may not qualify for the below discounts.

You are encouraged to discuss the applicability of one or more of the below discounts with a Company representative. These discounts are generally described below; consult the rate manual for a full description of the terms, conditions and requirements for such discount. These discounts only apply to transactions involving services rendered by the FNF Family of Companies. This notice only applies to transactions involving property improved with a one-to-four family residential dwelling.

**FNF Underwritten Title Companies**
FNTC - Fidelity National Title Company
FNTCCA - Fidelity National Title Company of California

**FNF Underwriter**
FNTIC - Fidelity National Title Insurance Co.

**Available Discounts**
**CREDIT FOR PRELIMINARY REPORTS AND/OR COMMITMENTS ON SUBSEQUENT POLICIES (FNTIC)**
Where no major change in the title has occurred since the issuance of the original report or commitment, the order may be reopened within 12 months and all or a portion of the charge previously paid for the report or commitment may be credited on a subsequent policy charge within the following time period from the date of the report.

**FEE REDUCTION SETTLEMENT PROGRAM (FNTC, FNTCCA and FNTIC)**
Eligible customers shall receive a $20.00 reduction in their title and/or escrow fees charged by the Company for each eligible transaction in accordance with the terms of the Final Judgments entered in The People of the State of California.

**DISASTER LOANS (FNTIC)**
The charge for a Lender's Policy (Standard or Extended coverage) covering the financing or refinancing by an owner of record, within 24 months of the date of a declaration of a disaster area by the government of the United States or the State of California on any land located in said area, which was partially or totally destroyed in the disaster, will be 50% of the appropriate title insurance rate.

**CHURCHES OR CHARITABLE NON-PROFIT ORGANIZATIONS (FNTIC)**
On properties used as a church or for charitable purposes within the scope of the normal activities of such entities, provided said charge is normally the church's obligation the charge for an owner's policy shall be 50% to 70% of the appropriate title insurance rate, depending on the type of coverage selected. The charge for a lender's policy shall be 40% to 50% of the appropriate title insurance rate, depending on the type of coverage selected.

**EMPLOYEE RATE (FNTC, FNTCCA and FNTIC)**
No charge shall be made to employees (including employees on approved retirement) of the Company or its underwritten, subsidiary or affiliated title companies for policies or escrow services in connection with financing, refinancing, sale or purchase of the employees' bona fide home property. Waiver of such charges is authorized only in connection with those costs which the employee would be obligated to pay, by established custom, as a party to the transaction.

# EXHIBIT 3



**TRITON EQUITIES**
A DIVISION OF COMMSERVE SINCE 1976

---

August 12, 2010

Mr. Jorge Echeverria
JC Properties group LLC.
750 Fir St #603
San Diego, CA 92101

RE:   Purchase money Loan request, 2483 Kettner Blvd., San Diego, CA 92103

Dear Mr. Jorge Echeverria:

On behalf of our funding partners Triton Equities is issuing a Letter of Intent for the above referenced property.  Terms are as follows:

| | |
|---|---|
| **Borrower:** | JC Properties group LLC. |
| **Collateral:** | 2483 Kettner Blvd., San Diego, CA 92103 |
| **Loan Requested:** | $310,000 Not to Exceed 50%LTV |
| **Interest Rate:** | 10.85% IO,  with a balloon payment due at the end of 5yrs. |
| **Fees:** | 3.50 Points $1,495 |
| **Broker** | 2.50 Points  Ryan Habib |
| **Prepayment Penalty** | 3 mo. |

The above terms are subject to conditions addressed below:

1. 12 months banks statements for both personal and Business (1st page only)
2. Insurance Information
3. Updated title and escrow

If these terms are acceptable please sign below and we will schedule the site inspection. Terms, Rates and Fee's are not locked until conditions are satisfied and with second Signature of Principal.

TERMINATION: This proposal shall terminate if not accepted by Borrower on or before;__8/18/2010__failure to timely comply will result in Lender terminating all further effort on this loan without notice to Borrower. Execution hereof and constitute Borrower's authorization to Lender to proceed in accordance with the terms hereof.

Darrell Bruneau, Senior Loan Analyst                    Mr. Jorge Echeverria

Date: 8-12-2010                                          Date 8/13/10

# EXHIBIT 4

## BALLOON NOTE
### (INTEREST ONLY)

Escrow No. 4323290-TS

**$435,000.00**                    **Encinitas**, California                    August 19, 2010

In installments as herein stated, for value received, I promise to pay to

**Panoche Valley LLC, a California Limited Liability Company** or order,

**at place designated by beneficiary**, the sum of **FOUR HUNDRED THIRTY-FIVE THOUSAND AND 00/100** DOLLARS,

with interest from __October 1, 2010_____, on the unpaid principal, at the rate of **4.00** percent per annum.
Interest payable in Monthly installments of

**ONE THOUSAND FOUR HUNDRED FIFTY AND 00/100 DOLLARS, ($1,450.00),**

OR MORE on the __First_____ day of each and every __Calendar Month_____, beginning on
__November 1, 2010_____, and continuing until __October 1, 2015_____.

**DUE ON SALE:** Anything herein to the contrary notwithstanding, in the event of a voluntary sale, transfer or conveyance of all or any portion of the property described herein, any indebtedness or obligation hereunder, shall at the option of the holder hereof, immediately become due and payable.

**BALLOON PAYMENT:** This note is subject to Section 2966 of the Civil Code, which provides that the holder of this note shall give written notice to the Trustor, or his successor in interest, of prescribed information as least 90 and not more than 150 days before any balloon payment is due.

Each payment shall be credited on interest then due, and the remainder on principal; and interest shall thereupon cease upon the principal so credited. Should default be made in payment of any installment when due the whole sum of principal and interest shall become due at the option of the holder of this note. Principal and interest payable in lawful money of the United States. If action be instituted on this note I promise to pay such sum as the Court may fix as attorney's fees. This note is secured by a Deed of Trust to **Fidelity National Title Company, a California Corporation**, herein called Trustee.

_____

Jorge A. Chavez

FD-230 (Rev. 12-20-95)                    INSTALLMENT NOTE-INTEREST INCLUDED

DO NOT DESTROY THIS NOTE: When paid, this note and the Deed of Trust must be
surrendered to Trustee for cancellation, before reconveyance will be made.

**RECORDING REQUESTED BY:**
Fidelity National Title Company
Escrow No. 4323290-TS
Title Order No. 06006464

**When Recorded Mail Document To:**
Panoche Valley LLC
PO Box 538
Fallbrook, CA 92088

APN: 533-630-03-00        SPACE ABOVE THIS LINE FOR RECORDER'S USE

## SHORT FORM DEED OF TRUST AND ASSIGNMENT OF RENTS

**THIS DEED OF TRUST,** made August 19, 2010, between **Jorge A. Chavez, An Unmarried Man**
herein called **TRUSTOR,** whose address is_____

**Fidelity National Title Company, a California Corporation,** herein called **TRUSTEE,** and
**Panoche Valley LLC, a California Limited Liability Company**
herein called **BENEFICIARY,**

**WITNESSETH:** That Trustor IRREVOCABLY GRANTS, TRANSFERS AND ASSIGNS to TRUSTEE IN TRUST, WITH POWER OF SALE, that property in San Diego County, California, described as:

SEE EXHIBIT ONE ATTACHED HERETO AND MADE A PART HEREOF

**DUE ON SALE:** Anything herein to the contrary notwithstanding, in the event of a voluntary sale, transfer or conveyance of all or any portion of the property described herein, any indebtedness or obligation hereunder, shall at the option of the holder hereof, immediately become due and payable.

TOGETHER WITH the rents, issues and profits thereof, SUBJECT, HOWEVER, to the right, power and authority given to and conferred upon Beneficiary by paragraph (10) of the provisions incorporated herein by reference to collect and apply such rents, issues and profits.

**For the Purpose of Securing:** 1. Performance of each agreement of Trustor incorporated by reference or contained herein. 2. Payment of the indebtedness evidenced by one promissory note of even date herewith, and any extension or renewal thereof, in the principal sum of **$435,000.00** executed by Trustor in favor of Beneficiary or order. 3. Payment of such further sums as the then record owner of said property hereafter may borrow from Beneficiary, when evidenced by another note (or notes) reciting it is so secured.

INITIALS _____ _____ _____ _____

FD-221B (Rev. 12/07)      SHORT FORM DEED OF TRUST      Page No. 1 of 4
(deedoft.wpd)(12-07)

APN:  533-630-03-00

**To Protect the Security of this Deed of Trust, Trustor Agrees:**  By the execution and delivery of this Deed of Trust and the note secured hereby, that provisions (1) to (14), inclusive, of the fictitious deed of trust recorded in Santa Barbara County and Sonoma County October 18, 1961, and in all other counties October 23, 1961, in the book and at the page of Official Records in the office of the county recorder of the county where said property is located, noted below opposite the name of such county, viz:

| COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Alameda | 435 | 684 | Kings | 792 | 833 | Placer | 895 | 301 | Sierra | 29 | 335 |
| Alpine | 1 | 250 | Lake | 362 | 39 | Plumas | 151 | 5 | Siskiyou | 468 | 181 |
| Amador | 104 | 348 | Lassen | 171 | 471 | Riverside | 3005 | 523 | Solano | 1105 | 182 |
| Butte | 1145 | 1 | Los Angeles | T2055 | 899 | Sacramento | 4331 | 62 | Sonoma | 1851 | 689 |
| Calaveras | 145 | 152 | Madera | 810 | 170 | San Benito | 271 | 383 | Stanislaus | 1715 | 456 |
| Colusa | 296 | 617 | Marin | 1508 | 339 | San Bernardino | 5567 | 61 | Sutter | 572 | 297 |
| Contra Costa | 3978 | 47 | Mariposa | 77 | 292 | San Francisco | A332 | 905 | Tehama | 401 | 289 |
| Del Norte | 78 | 414 | Mendocino | 579 | 530 | San Joaquin | 2470 | 311 | Trinity | 93 | 366 |
| El Dorado | 568 | 456 | Merced | 1547 | 538 | San Luis Obispo | 1151 | 12 | Tulare | 2294 | 275 |
| Fresno | 4626 | 572 | Modoc | 184 | 851 | San Mateo | 4078 | 420 | Tuolumne | 135 | 47 |
| Glenn | 422 | 184 | Mono | 52 | 429 | Santa Barbara | 1878 | 860 | Ventura | 2062 | 386 |
| Humboldt | 657 | 527 | Monterey | 2194 | 538 | Santa Clara | 5336 | 341 | Yolo | 653 | 245 |
| Imperial | 1091 | 501 | Napa | 639 | 86 | Santa Cruz | 1431 | 494 | Yuba | 334 | 486 |
| Inyo | 147 | 598 | Nevada | 305 | 320 | Shasta | 684 | 528 | | | |
| Kern | 3427 | 60 | Orange | 5889 | 611 | San Diego | Series 2 Book 1961, Page 183887 | | | | |

which provisions, identical in all counties, (printed on the attached unrecorded pages) are hereby adopted and incorporated herein and made a part hereof as fully as though set forth herein at length; that Trustor will observe and perform said provisions; and that the references to property, obligations and parties in said provisions shall be construed to refer to the property, obligations, and parties set forth in this Deed of Trust.

The undersigned Trustor requests that a copy of any Notice of Default and of any Notice of Sale hereunder be mailed to him at his address hereinbefore set forth.

State of California                                                    )
County of <u>San Diego</u>_____ )

Jorge A. Chavez

On _____ before me,
_____, Notary Public
(here insert name and title of the officer), personally appeared        Jorge A. Chavez,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

APN: 533-630-03-00

## DO NOT RECORD

The following is a copy of provisions (1) to (14), inclusive, of the fictitious deed of trust, recorded in each county in California, as stated in the foregoing Deed of Trust and incorporated by reference in said Deed of Trust as being a part thereof as if set forth at length therein.

**TO PROTECT THE SECURITY OF THIS DEED OF TRUST, TRUSTOR AGREES:**

(1) To keep said property in good condition and repair; not to remove or demolish any building thereon; to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefor; to comply with all laws affecting said property or requiring any alterations or improvements to be made thereon; not to commit or permit waste thereof; not to commit, suffer or permit any act upon said property in violation of law; to cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of said property may be reasonably necessary, the specific enumerations herein not excluding the general.

(2) To provide, maintain and deliver to Beneficiary fire insurance satisfactory to and with loss payable to Beneficiary. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon any indebtedness secured hereby and in such order as Beneficiary may determine, or at option of Beneficiary the entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(3) To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; and to pay all costs and expenses, including cost of evidence of title and attorney's fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this Deed.

(4) To pay: at least ten days before delinquency all taxes and assessments affecting said property, including assessments on appurtenant water stock; when due, all incumbrances, charges and liens, with interest, on said property or any part thereof, which appear to be prior or superior hereto; all costs, fees and expenses of this Trust.

Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may: make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof, Beneficiary or Trustee being authorized to enter upon said property for such purposes; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; pay, purchase, contest or compromise any incumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto; and, in exercising any such powers, pay necessary expenses, employ counsel and pay his reasonable fees.

(5) To pay immediately and without demand all sums so expended by Beneficiary or Trustee, with interest from date of expenditure at the amount allowed by law in effect at the date hereof, and to pay for any statement provided for by law in effect at the date hereof regarding the obligation secured hereby any amount demanded by the Beneficiary not to exceed the maximum allowed by law at the time when said statement is demanded.

(6) That any award of damages in connection with any condemnation for public use of or injury to said property or any part thereof is hereby assigned and shall be paid to Beneficiary who may apply or release such moneys received by him in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

(7) That by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his right either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.

(8) That at any time or from time to time, without liability therefor and without notice, upon written request of Beneficiary and presentation of this Deed and said note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may: reconvey any part of said property; consent to the making of any map or plat thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge hereof.

(9) That upon written request of Beneficiary stating that all sums secured hereby have been paid, and upon surrender of this Deed and said note to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The Grantee in such reconveyance may be described as "the person or persons legally entitled thereto." Five years after issuance of such full reconveyance, Trustee may destroy said note and this Deed (unless directed in such request to retain them).

(10) That as additional security, Trustor hereby gives to and confers upon Beneficiary the right, power and authority, during the continuance of these Trusts, to collect the rents, issues and profits of said property, reserving unto Trustor the right, prior to any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such rents, issues and profits as they become due and payable. Upon any such default, Beneficiary may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of said property or any part thereof, in his own name sue for or otherwise collect such, rents, issues, and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorney's fees, upon any indebtedness secured hereby, and in such order as Beneficiary may determine. The entering upon and taking possession of said property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(11) That upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold said property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed, said note and all documents evidencing expenditures secured hereby.

INITIALS _____ _____ _____ _____

APN: 533-630-03-00                              **DO NOT RECORD**

After the lapse of such time as may then be required by law following the recordation of said notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash of lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the proceeding postponement. Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

(12) Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where said property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties. Said instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and pages where this Deed is recorded and the name and address of the new Trustee.

(13) That this Deed applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Beneficiary shall mean the owner and holder, including pledgees, of the note secured hereby, whether or not named as Beneficiary herein. In this Deed, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

(14) That Trustee accepts this Trust when this Deed, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

INITIALS _____ _____ _____ _____

## REQUEST FOR FULL RECONVEYANCE

**Fidelity National Title Company, a California Corporation,** TRUSTEE:
The undersigned is the legal owner and holder of all indebtedness secured by the within Deed of Trust. All sums secured by said Deed of Trust have been fully paid and satisfied; and you are hereby requested and directed, on payment to you of any sums owing to you under the terms of said Deed of Trust, to cancel all evidences of indebtedness, secured by said Deed of Trust, delivered to you herewith, together with the said Deed of Trust, and to reconvey, without warranty, to the parties designated by the terms of said Deed of Trust, all the estate now held by you under the same.

Dated _____

_____        _____

By:_____        By:_____

Please mail Reconveyance to:

_____

Do not lose or destroy this Deed of Trust OR THE NOTE which it secures. Both original documents must be delivered to the Trustee for cancellation before reconveyance will be made.

State of California                              )
County of _____ )

On _____ before me, _____, Notary Public
(here insert name and title of the officer), personally appeared_____
_____
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

_____

FD-221B (Rev. 12/07)                    SHORT FORM DEED OF TRUST                    Page No. 4 of 4
(deedoft.wpd)(12-07)

Escrow No.  4323290-TS
Title Order No. 06006464

# EXHIBIT ONE

Parcel A:

Lot 3 of West Laurel Studios, in the City of San Diego, County of San Diego, State of California, according to Map thereof no. 15620 (tentative Map No. 377076) filed in the office of the County recorder of said San Diego County, September 21, 2007.

Parcel B:

A private access and utilities easement over, under, along and across the following described property:

That portion of West laurel studios, in the City of San Diego, County of San Diego, State of California, according to Map thereof No. 15620 (tentative Map no. 377076), filed in the office of the County recorder of said San Diego County, September 21, 2007, shown on said Map as "private access and utility easement" and more particularly described as follows:

Beginning at most Southerly corner of Lot 5 of Map no. 15620, also being a point on the Easterly right of way line of Kettner Boulevard; thence along said right of way line North 19° 43' 43" West, 5.00 feet; thence North 70° 17' 49" West; 38.21 feet; thence North 19° 42' 08" West, 20.10 feet; thence South 70° 16' 47" West, 1.04 feet; thence North 20° 00' 54"West, 53.68 feet; thence North 70° 18' 28" East, 15.07 feet; thence North 19° 43' 13" West, 21.36 feet to a point on the Northerly Lot line of Lot 10, also being a point on the Southerly right of way line of laurel street; thence Easterly along said Southerly right of way line North 70° 24' 05" East, 20.01 feet; thence leaving said right of way line South 19°42 '11"East, 18.25 feet; thence North 70° 12' 11" West, 3.33 feet; thence South 19°42 '11"East, 18.25 feet; thence North 70°24 '05"West, 4.67 feet; thence North 19° 42' 20" West, 18.25 feet; thence South 70° 29' 14" West, 4.67 feet; thence South 19° 38' 53" East, 23.38 feet; thence South 70° 16' 47" West, 8.00 feet; thence South 19° 42' 07" East, 11.33 feet; thence South 70° 16' 47" West, 8.66 feet; thence South 19° 42' 07" East, 24.17 feet to the South line of Lot 8; thence South 19° 42' 07" East, 19.29 feet to the South line of Lot 7; thence South 70° 16' 10" West, 24.16 feet; thence South 19° 43' 13" East, 21.90 feet to a point on the Southerly Lot line of said Lot 5; thence Westerly along said Southerly Lot line South 70° 22' 33" West, 50.21feet to the point of beginning

# EXHIBIT 5



**CALIFORNIA ASSOCIATION OF REALTORS®**

# ADDENDUM

### (C.A.R. Form ADM, Revised 10/01)

**No.** *3*

The following terms and conditions are hereby incorporated in and made a part of the: ☐ Residential Purchase Agreement, ☐ Manufactured Home Purchase Agreement, ☐ Business Purchase Agreement, ☐ Residential Lease or Month-to-Month Rental Agreement, ☐ Vacant Land Purchase Agreement, ☐ Residential Income Property Purchase Agreement, ☐ Commercial Property Purchase Agreement, ☒ other *CPA, amends the contract*

dated ___*March 16, 2010*___ , on property known as *2487 Kettner Blvd*

in which _____*Matthew Privul, eAccounts*_____ is referred to as ("Buyer/Tenant")
and _____*Panoche Valley LLC*_____ is referred to as ("Seller/Landlord").

*This addendum takes the place of Addendum 2 Dated July 26th.*

*1.  Seller to pay all loan costs from private lender.*

*2.  Seller contribution of $18,000 released to Buyer upon COE*

*3.  Buyer agrees to give Seller an additional 6,000 shares of said stock.*

*4.  Lender will do loan of $340,000, so, Seller will carry back $50,000 at 6.5% interest only monthly payments of  $270.83, 1 year all do and payable balloon.*

The foregoing terms and conditions are hereby agreed to, and the undersigned acknowledge receipt of a copy of this document.

Date *August 17, 2010*

Buyer/Tenant _____
*Matthew Privul*

Buyer/Tenant _____
*eAccounts*

Date *August 17, 2010*

Seller/Landlord _____
*Panoche Valley LLC*

Seller/Landlord _____

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright© 1986-2001, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.

THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

ADM-11 REVISED 10/01 (PAGE 1 OF 1)

| Reviewed by |
| Broker or Designee _____ Date _____ |

**EQUAL HOUSING OPPORTUNITY**

**ADDENDUM (ADM-11 PAGE 1 OF 1)**

| Agent:  Benjamin Williams | Phone: 760 632-0160 | Fax: 760 448-6534 | Prepared using WINForms® software |
| Broker: Best Financial Consultants 2408 La Costa Ave,  Carlsbad CA 92009 |


CALIFORNIA
ASSOCIATION
OF REALTORS®

# COMMERCIAL PROPERTY PURCHASE AGREEMENT
# AND JOINT ESCROW INSTRUCTIONS
### (NON-RESIDENTIAL)
(C.A.R. Form CPA, Revised 10/02)

Date _January 16, 2010_____ , at _____ 2408 La Costa Ave, Carlsbad _____ , California.

**1. OFFER:**

**A. THIS IS AN OFFER FROM** _____ Matthew Privul, eAccounts _____ ("Buyer").
☒ Individual(s), ☒ A Corporation, ☐ A Partnership, ☐ An LLC, ☐ An LLP, or ☐ Other _____

**B. THE REAL PROPERTY TO BE ACQUIRED** is described as _____ 2487 Kettner Blvd _____
_____ , Assessor's Parcel No. _533-630-02-00_____ , situated in
_____San Diego_____ , County of _____San Diego_____ , California, ("Property").

**C. THE PURCHASE PRICE** offered is _Six Hundred Fifty Thousand_____
Dollars $ _650,000.00_____ .

**D. CLOSE OF ESCROW** shall occur on _____ (date) (or ☐ ___45___ **Days** After Acceptance).

**2. FINANCE TERMS:** Obtaining the loans below **is a contingency** of this Agreement unless: **(i)** either 2L or 2M is checked below; or **(ii)** otherwise agreed in writing. Buyer shall act diligently and in good faith to obtain the designated loans. Obtaining deposit, down payment and closing costs **is not a contingency.** Buyer represents that funds will be good when deposited with Escrow Holder.

**A. INITIAL DEPOSIT:** Buyer has given a deposit in the amount of . . . . . . . . . . . . . . . . . . . $ ___1,000.00___
to the agent submitting the offer (or to ☐ _____ ), by Personal Check
(or ☐ _____ ), made payable to _____ Fidelity Escrow _____
which shall be held uncashed until Acceptance and then deposited within 3 business days after
Acceptance or ☐ _____
with Escrow Holder, or ☐ into Broker's trust account.

**B. INCREASED DEPOSIT:** Buyer shall deposit with Escrow Holder an increased deposit in the amount of . . $ ___260,000.00___
within _____ **Days** After Acceptance, or ☒ **See line 36 F**

**C. FIRST LOAN IN THE AMOUNT OF** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ ___390,000.00___
NEW First Deed of Trust in favor of ☒ Lender, ☐ Seller,
OR ☐ ASSUMPTION of (or ☐ "subject to") Existing First Deed of Trust encumbering the Property, securing
a note payable at maximum interest of _____ % fixed rate, or _____ % initial adjustable
rate with a maximum interest rate of _____ %, balance due in _____ years, amortized over
_____ years. (If checked: ☐ and with a margin not to exceed _____ %, tied to the following
index _____ .) Buyer shall pay loan fees/points not to exceed ___$6,500___
Additional terms _____
_____

**D. SECOND LOAN IN THE AMOUNT OF** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____
NEW Second Deed of Trust in favor of ☐ Lender, ☐ Seller,
OR ☐ ASSUMPTION of (or ☐ "subject to") Existing Second Deed of Trust encumbering the Property,
securing a note payable at maximum interest of _____ % fixed rate, or _____ %
initial adjustable rate with a maximum interest rate of _____ %, balance due in _____ years,
amortized over _____ years. (If checked: ☐ and with a margin not to exceed _____ %, tied to
the following index: _____ .) Buyer shall pay loan fees/points not to exceed _____
Additional terms _____

**E. ADDITIONAL FINANCING TERMS:** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____
_____
_____

**F. BALANCE OF PURCHASE PRICE** (not including costs of obtaining loans and other closing costs) in the amount of . . $ ___(1,000.00)___
to be deposited with Escrow Holder within sufficient time to close escrow.

**G. PURCHASE PRICE (TOTAL):** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ ___650,000.00___

**H. LOAN APPLICATIONS:** Within 7 (or ☐ _____ ) **Days** After Acceptance, Buyer shall provide Seller a letter from lender or
mortgage loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or
preapproved for any NEW loan specified above.

**I. VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS:** Buyer (or Buyer's lender or loan broker pursuant to 2H) shall,
within 7 (or ☐ _____ ) **Days** After Acceptance, provide Seller written verification of Buyer's down payment and closing costs.

**J. LOAN CONTINGENCY REMOVAL: (i)** Within 17 (or ☐ _____ ) **Days** After Acceptance Buyer shall, as specified in Paragraph 17,
remove the loan contingency or cancel this Agreement; **OR (ii)** (if checked) ☒ loan contingency shall remain in effect until the
designated loans are funded.

**K. APPRAISAL CONTINGENCY AND REMOVAL:** This Agreement is (**OR**, if checked, ☐ is NOT) contingent upon the Property
appraising at no less than the specified purchase price. If there is a loan contingency, at the time the loan contingency is removed
(or, if checked, ☐ within 17 (or _____ ) **Days** After Acceptance), Buyer shall, as specified in paragraph 17, remove the
appraisal contingency or cancel this Agreement. If there is no loan contingency, Buyer shall, as specified in paragraph 17, remove
the appraisal contingency within 17 (or _____ ) **Days** After Acceptance.

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized
reproduction of this form, or any portion thereof, by photocopy machine or any other
means, including facsimile or computerized formats. Copyright © 1991-2007,
CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.
**CPA REVISED 10/02 (PAGE 1 OF 10)**

Buyer's Initials ( _____ )( _____ )
Seller's Initials ( _18_ )( _____ )
Reviewed by _____ Date _____

EQUAL HOUSING
OPPORTUNITY

**COMMERCIAL PROPERTY PURCHASE AGREEMENT (CPA PAGE 1 OF 10)**

**Agent:** Benjamin Williams                **Phone:** 760 632-0160        **Fax:** 760 448-6534        **Prepared using WINForms® software**
**Broker:** Best Financial Consultants 2408 La Costa Ave, Carlsbad CA 92009

Property Address: *2487 Kettner Blvd*
*San Diego, CA  92101* _____ Date: *January 16, 2010*

**L.** ☐ **NO LOAN CONTINGENCY (If checked):** Obtaining any loan, in paragraphs 2C, 2D, 2E or elsewhere in this Agreement, is NOT a contingency of this Agreement. If Buyer does not obtain the loan and as a result Buyer does not purchase the Property, Seller may be entitled to Buyer's deposit or other legal remedies.

**M.** ☐ **ALL CASH OFFER (If checked):** No loan is needed to purchase the Property. Buyer shall, within **7 (or** ☐ _____ **) Days** After Acceptance, provide Seller written verification of sufficient funds to close this transaction.

**N.** **SELLER FINANCING:** For any Seller financing designated above, Buyer is to execute a note secured by a deed of trust in favor of Seller, on the terms and conditions set forth in the attached addendum (C.A.R. Form SFA).

**O.** **ASSUMED OR "SUBJECT TO" FINANCING:** Seller represents that Seller is not delinquent on any payments due on any loans. Seller shall, within the time specified in paragraph 17, provide Copies of all applicable notes and deeds of trust, loan balances and current interest rates to Buyer. Buyer shall then, as specified in paragraph 17, remove this contingency or cancel this Agreement. Differences between estimated and actual loan balances shall be adjusted at Close Of Escrow by cash down payment. Impound accounts, if any, shall be assigned and charged to Buyer and credited to Seller. Seller is advised that Buyer's assumption of an existing loan may not release Seller from liability on that loan. If the Property is acquired subject to an existing loan, Buyer and Seller are advised to consult with legal counsel regarding the ability of an existing lender to call the loan due, and the consequences thereof.

**3. CLOSING AND OCCUPANCY:**

**A.** **Seller-Occupied or Vacant Units:** Occupancy shall be delivered to Buyer at _____ ☐ AM ☐ PM, ☐ on the date of Close Of Escrow; ☐ on _____ ; or ☐ no later than _____ **Days After Close Of Escrow.** (C.A.R. Form PAA, paragraph 2.) If transfer of title and occupancy do not occur at the same time, Buyer and Seller are advised to: **(i)** enter into written occupancy agreement; and **(ii)** consult with their insurance and legal advisors.

**B.** **Tenant-Occupied Units:** Possession and occupancy, subject to the rights of tenants under existing leases, shall be delivered to Buyer on Close Of Escrow.

**C.** At Close Of Escrow, Seller assigns to Buyer any assignable warranty rights for items included in the sale and shall provide any available Copies of such warranties. Brokers cannot and will not determine the assignability of any warranties.

**D.** At Close Of Escrow, unless otherwise agreed in writing, Seller shall provide keys and/or means to operate all locks, mailboxes, security systems, alarms and garage door openers. If the Property is a unit in a condominium or located in a common-interest subdivision, Buyer may be required to pay a deposit to the Owners' Association ("OA") to obtain keys to accessible OA facilities.

**4. SECURITY DEPOSITS:** Security deposits, if any, to the extent they have not been applied by Seller in accordance with any rental agreement and current Law, shall be transferred to Buyer on Close Of Escrow. Seller shall notify each tenant, in compliance with the Civil Code.

**5. ALLOCATION OF COSTS** (if checked): Unless otherwise specified here, this paragraph only determines who is to pay for the report, inspection, test or service mentioned. If not specified here or elsewhere in this Agreement, the determination of who is to pay for any work recommended or identified by any such report, inspection, test or service is by the method specified in paragraph 17.

**A.** **INSPECTIONS AND REPORTS:**
  (1) ☐ Buyer ☐ Seller shall pay for sewer connection, if required by Law prior to Close Of Escrow _____
  (2) ☐ Buyer ☐ Seller shall pay to have septic or private sewage disposal system inspected _____
  (3) ☐ Buyer ☐ Seller shall pay to have domestic wells tested for water potability and productivity _____
  (4) ☐ Buyer ☒ Seller shall pay for a natural hazard zone disclosure report prepared by *Any licensed Company*
  (5) ☒ Buyer ☐ Seller shall pay for the following inspection or report *Appraisal for Lender*
  (6) ☐ Buyer ☐ Seller shall pay for the following inspection or report _____

**B.** **GOVERNMENT REQUIREMENTS AND RETROFIT:**
  (1) ☐ Buyer ☒ Seller shall pay for smoke detector installation and/or water heater bracing, if required by Law. Prior to Close Of Escrow Seller shall provide Buyer a written statement of compliance in accordance with state and local Law, unless exempt.
  (2) ☐ Buyer ☒ Seller shall pay the cost of compliance with any other minimum mandatory government retrofit standards, inspections and reports if required as a condition of closing escrow under any Law.
  (3) ☐ Buyer ☒ Seller shall pay for installation of approved fire extinguisher(s), sprinkler(s), and hose(s), if required by Law, which shall be installed prior to Close Of Escrow. Prior to Close Of Escrow Seller shall provide Buyer a written statement of compliance, if required by Law.

**C.** **ESCROW AND TITLE:**
  (1) ☐ Buyer ☒ Seller shall pay escrow fee *for both Buyer and Seller.*
    Escrow Holder shall be *Fidelity Escrow*
  (2) ☐ Buyer ☒ Seller shall pay for owner's title insurance policy specified in paragraph 16
    Owner's title policy to be issued by *Fidelity Title*
    (Buyer shall pay for any title insurance policy insuring Buyer's **lender**, unless otherwise agreed in writing.)

**D.** **OTHER COSTS:**
  (1) ☐ Buyer ☒ Seller shall pay County transfer tax or transfer fee _____
  (2) ☐ Buyer ☒ Seller shall pay City transfer tax or transfer fee _____
  (3) ☐ Buyer ☐ Seller shall pay OA transfer fees _____
  (4) ☐ Buyer ☐ Seller shall pay OA document preparation fees _____
  (5) ☐ Buyer ☐ Seller shall pay for _____
  (6) ☐ Buyer ☐ Seller shall pay for _____

Buyer's Initials ( _____ ) ( _____ )
Seller's Initials ( _____ ) ( _____ )
Reviewed by _____ Date _____

Copyright © 1991-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
**CPA REVISED 10/02 (PAGE 2 OF 10)**



**COMMERCIAL PROPERTY PURCHASE AGREEMENT (CPA PAGE 2 OF 10)**                    Kettner zfx

**2487 Kettner Blvd**
Property Address: San Diego, CA  92101               Date: January 16, 2010

**6.  SELLER DISCLOSURES:**

    **A.  NATURAL AND ENVIRONMENTAL DISCLOSURES:** Seller shall, within the time specified in paragraph 17, if required by Law: **(i)** deliver to Buyer earthquake guides (and questionnaire) and environmental hazards booklet; **(ii)** even if exempt from the obligation to provide an NHD, disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; Seismic Hazard Zone; and **(iii)** disclose any other zone as required by Law and provide any other information required for those zones.

    **B.  ADDITIONAL DISCLOSURES:** Within the time specified in paragraph 17, Seller shall provide to Buyer, in writing, the following disclosures, documentation and information:

        **(1) RENTAL SERVICE AGREEMENTS: (i)** All current leases, rental agreements, service contracts, and other agreements pertaining to the operation of the Property; and **(ii)** a rental statement including names of tenants, rental rates, period of rental, date of last rent increase, security deposits, rental concessions, rebates, or other benefits, if any, and a list of delinquent rents and their duration. Seller represents that no tenant is entitled to any concession, rebate, or other benefit, except as set forth in these documents.

        **(2) INCOME AND EXPENSE STATEMENTS:** The books and records, including a statement of income and expense for the 12 months preceding Acceptance. Seller represents that the books and records are those maintained in the ordinary and normal course of business, and used by Seller in the computation of federal and state income tax returns.

        **(3) ☐ TENANT ESTOPPEL CERTIFICATES:** (If checked) Tenant estoppel certificates (C.A.R. Form TEC) completed by Seller or Seller's agent, and signed by tenants, acknowledging: **(i)** that tenants' rental or lease agreements are unmodified and in full force and effect (or if modified, stating all such modifications); **(ii)** that no lessor defaults exist; and **(iii)** stating the amount of any prepaid rent or security deposit.

        **(4) SURVEYS, PLANS AND ENGINEERING DOCUMENTS:** Copies of surveys, plans, specifications and engineering documents, if any, in Seller's possession or control.

        **(5) PERMITS:** If in Seller's possession, Copies of all permits and approvals concerning the Property, obtained from any governmental entity, including, but not limited to, certificates of occupancy, conditional use permits, development plans, and licenses and permits pertaining to the operation of the Property.

        **(6) STRUCTURAL MODIFICATIONS:** Any known structural additions or alterations to, or the installation, alteration, repair or replacement of, significant components of the structure(s) upon the Property.

        **(7) GOVERNMENTAL COMPLIANCE:** Any improvements, additions, alterations or repairs made by Seller, or known to Seller to have been made, without required governmental permits, final inspections, and approvals.

        **(8) VIOLATION NOTICES:** Any notice of violations of any Law filed or issued against the Property and actually known to Seller.

        **(9) MISCELLANEOUS ITEMS:** Any of the following, if actually known to Seller: **(i)** any current pending lawsuit(s), investigation(s), inquiry(ies), action(s), or other proceeding(s) affecting the Property, or the right to use and occupy it; **(ii)** any unsatisfied mechanic's or materialman's lien(s) affecting the Property; and **(iii)** that any tenant of the Property is the subject of a bankruptcy.

**7.  ☐ ENVIRONMENTAL SURVEY** (If checked): Within _____ **Days** After Acceptance, Buyer shall be provided a phase one environmental survey report paid for and obtained by **☐ Buyer ☐ Seller**. Buyer shall then, as specified in paragraph 17, remove this contingency or cancel this Agreement.

**8.  CONDOMINIUM/PLANNED UNIT DEVELOPMENT DISCLOSURES:**

    **A.  SELLER HAS: 7 (or ☐ _____ ) Days** After Acceptance to disclose to Buyer whether the Property is a condominium, or located in a planned unit development or other common interest subdivision.

    **B.  If** Property is a condominium, or located in a planned unit development or other common interest subdivision, Seller has **3 (or ☐ _____ ) Days** After Acceptance to request from the OA (C.A.R. Form HOA): **(i)** Copies of any documents required by Law; **(ii)** disclosure of any pending or anticipated claim or litigation by or against the OA; **(iii)** a statement containing the location and number of designated parking and storage spaces; **(iv)** Copies of the most recent 12 months of OA minutes for regular and special meetings; and **(v)** the names and contact information of all OA's governing the Property. (Collectively, "CI Disclosures.") Seller shall itemize and deliver to Buyer all CI Disclosures received from the OA and any CI Disclosures in Seller's possession. Buyer's approval of CI Disclosures is a contingency of this Agreement as specified in paragraph 17.

**9.  SUBSEQUENT DISCLOSURES:** In the event Seller, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer of which Buyer is otherwise unaware, Seller shall promptly provide a subsequent or amended disclosure or notice in writing, covering those items. **However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies disclosed in reports ordered and paid for by Buyer.**

**10. CHANGES DURING ESCROW:**

    **A.  Prior** to Close Of Escrow, Seller may only engage in the following acts, ("Proposed Changes"), subject to Buyer's rights in paragraph 17: **(i)** rent or lease any vacant unit or other part of the premises; **(ii)** alter, modify, or extend any existing rental or lease agreement; **(iii)** enter into, alter, modify or extend any service contract(s); or **(iv)** change the status of the condition of the Property.

    **B.  At** least 7 (or ☐ _____ ) **Days** prior to any Proposed Changes, Seller shall give written notice to Buyer of any Proposed Changes.

Copyright © 1991-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
**CPA REVISED 10/02 (PAGE 3 OF 10)**

Buyer's Initials ( ___ ) ( ___ )
Seller's Initials ( ___ ) ( ___ )

Reviewed by _____ Date _____



**COMMERCIAL PROPERTY PURCHASE AGREEMENT (CPA PAGE 3 OF 10)**

Kettner.zfx

*2487 Kettner Blvd*
Property Address: San Diego, CA  92101                                                    Date: *January 16, 2010*

**11. CONDITIONS AFFECTING PROPERTY:**
   A. Unless otherwise agreed: **(i) the Property is sold (a) in its PRESENT physical condition as of the date of Acceptance and (b) subject to Buyer's investigation rights; (ii)** the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; and **(iii)** all debris and personal property not included in the sale shall be removed by Close Of Escrow.
   B. **SELLER SHALL**, within the time specified in paragraph 17, **DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS** affecting the Property, including known insurance claims within the past five years, **AND MAKE OTHER DISCLOSURES REQUIRED BY LAW.**
   C. **NOTE TO BUYER: You are strongly advised to conduct investigations of the entire Property in order to determine its present condition since Seller may not be aware of all defects affecting the Property or other factors that you consider important. Property improvements may not be built according to code, in compliance with current Law, or have had permits issued.**
   D. **NOTE TO SELLER: Buyer has the right to inspect the Property and, as specified in paragraph 17, based upon information discovered in those inspections: (i) cancel this Agreement; or (ii) request that you make Repairs or take other action.**

**12. ITEMS INCLUDED AND EXCLUDED:**
   A. **NOTE TO BUYER AND SELLER:** Items listed as included or excluded in the MLS, flyers or marketing materials are not included in the purchase price or excluded from the sale unless specified in 12B or C.
   B. **ITEMS INCLUDED IN SALE:**
      **(1)** All EXISTING fixtures and fittings that are attached to the Property.
      **(2)** Existing electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar systems, built-in appliances, window and door screens, awnings, shutters, window coverings, attached floor coverings, television antennas, satellite dishes, private integrated telephone systems, air coolers/conditioners, pool/spa equipment, garage door openers/remote controls, mailbox, in-ground landscaping, trees/shrubs, water softeners, water purifiers, security systems/alarms.
      **(3)** A complete inventory of all personal property of Seller currently used in the operation of the Property and included in the purchase price shall be delivered to Buyer within the time specified in paragraph 17.
      **(4)** Seller represents that all items included in the purchase price are, unless otherwise specified, owned by Seller. Within the time specified in paragraph 17, Seller shall give Buyer a list of fixtures not owned by Seller.
      **(5)** Seller shall deliver title to the personal property by Bill of Sale, free of all liens and encumbrances, and without warranty of condition.
      **(6)** As additional security for any note in favor of Seller for any part of the purchase price, Buyer shall execute a UCC-1 Financing Statement to be filed with the Secretary of State, covering the personal property included in the purchase, replacement thereof, and insurance proceeds.
   C. **ITEMS EXCLUDED FROM SALE:** _____
   _____

**13. BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:**
   A. Buyer's acceptance of the condition of, and any other matter affecting the Property is a contingency of this Agreement, as specified in this paragraph and paragraph 17. Within the time specified in paragraph 17, Buyer shall have the right, at Buyer's expense unless otherwise agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations"), including, but not limited to, the right to: **(i)** inspect for lead-based paint and other lead-based paint hazards; **(ii)** inspect for wood destroying pests and organisms; **(iii)** confirm the insurability of Buyer and the Property; and **(iv)** satisfy Buyer as to any matter of concern to Buyer. Without Seller's prior written consent, Buyer shall neither make nor cause to be made: **(i)** invasive or destructive Buyer Investigations; or **(ii)** inspections by any governmental building or zoning inspector, or government employee, unless required by Law.
   B. Buyer shall complete Buyer Investigations and, as specified in paragraph 17, remove the contingency or cancel this Agreement. Buyer shall give Seller, at no cost, complete Copies of all Buyer Investigation reports obtained by Buyer. Seller shall make Property available for all Buyer Investigations. Seller shall have water, gas, electricity, and all operable pilot lights on for Buyer's Investigations and through the date possession is made available to Buyer.

**14. REPAIRS:** Repairs shall be completed prior to final verification of condition unless otherwise agreed in writing. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. It is understood that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: **(i)** obtain receipts for Repairs performed by others; **(ii)** prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and **(iii)** provide Copies of receipts and statements to Buyer prior to final verification of condition.

**15. BUYER INDEMNITY AND SELLER PROTECTION FOR ENTRY UPON PROPERTY:** Buyer shall: **(i)** keep the Property free and clear of liens; **(ii)** Repair all damage arising from Buyer Investigations; and **(iii)** indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-Responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination of this Agreement.

Copyright © 1991-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
**CPA REVISED 10/02 (PAGE 4 OF 10)**

Buyer's Initials ( _____ )( _____ )
Seller's Initials ( _____ )( _____ )
Reviewed by _____ Date _____

**COMMERCIAL PROPERTY PURCHASE AGREEMENT (CPA PAGE 4 OF 10)**                                   Kettner zfx

**2487 Kettner Blvd**

Property Address: San Diego, CA  92101 _____ Date: January 16, 2010

**16.  TITLE AND VESTING:**

**A.** Within the time specified in paragraph 17, Buyer shall be provided a current preliminary (title) report, which is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. Buyer's review of the preliminary report and any other matters which may affect title are a contingency of this Agreement as specified in paragraph 17.

**B.** Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except: **(i)** monetary liens of record unless Buyer is assuming those obligations or taking the property subject to those obligations; and **(ii)** those matters which Seller has agreed to remove in writing.

**C.** Within the time specified in paragraph 17, Seller has a duty to disclose to Buyer all matters known to Seller affecting title, whether of record or not.

**D.** At Close Of Escrow, Buyer shall receive a grant deed conveying title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's supplemental escrow instructions. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.

**E.** Buyer shall receive a standard coverage owner's CLTA policy of title insurance. An ALTA policy or the addition of endorsements may provide greater coverage for Buyer. A title company, at Buyer's request, can provide information about the availability, desirability, coverage, and cost of various title insurance coverages and endorsements. If Buyer desires title coverage other than that required by this paragraph, Buyer shall instruct Escrow Holder in writing and pay any increase in cost.

**17.  TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS: The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph must be in writing (C.A.R. Form CR).**

**A.  SELLER HAS: 7 (or ☐ _____ ) Days** After Acceptance to deliver to Buyer all reports, disclosures and information for which Seller is responsible under paragraphs 5, 6A and 8, 8A, 11B, 12B (3) and (4) and 16.

**B.  BUYER HAS: 17 (or ☐ _____ ) Days** After Acceptance, unless otherwise agreed in writing, to:

**(1)** Complete all Buyer Investigations; approve all disclosures, reports and other applicable information, which Buyer receives from Seller; and approve all matters affecting the Property (including lead-based paint and lead-based paint hazards as well as other information specified in paragraph 6 and insurability of Buyer and the Property).

**(2)** Within the time specified in 17B(1), Buyer may request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to Buyer's requests.

**(3)** By the end of the time specified in 17B(1) (or 2J for loan contingency or 2K for appraisal contingency), Buyer shall remove, in writing, the applicable contingency (C.A.R. Form CR) or cancel this Agreement. However, if the following inspections, reports or disclosures are not made within the time specified in 17A, then Buyer has **5 (or ☐ _____ ) Days** after receipt of any such items, or the time specified in 17B(1), whichever is later, to remove the applicable contingency or cancel this Agreement in writing: **(i)** government-mandated inspections or reports required as a condition of closing; **(ii)** Common Interest Disclosures pursuant to paragraph 8B; **(iii)** a subsequent or amended disclosure pursuant to paragraph 9; **(iv)** Proposed Changes pursuant to paragraph 10B; and **(v)** environmental survey pursuant to paragraph 7.

**C.  CONTINUATION OF CONTINGENCY OR CONTRACTUAL OBLIGATION; SELLER RIGHT TO CANCEL:**

**(1) Seller right to Cancel: Buyer Contingencies:** Seller, after first giving Buyer a Notice to Buyer to Perform (as specified below), may cancel this Agreement in writing and authorize return of Buyer's deposit if, by the time specified in the Agreement, Buyer does not remove in writing the applicable contingency or cancel this Agreement. Once all contingencies have been removed, failure of either Buyer or Seller to close escrow in time may be a breach of this Agreement.

**(2) Continuation of Contingency:** Even after the expiration of the time specified in 17B, Buyer retains the right to make requests to Seller, remove in writing the applicable contingency or cancel this Agreement until Seller cancels pursuant to 17C(1). Once Seller receives Buyer's written removal of all contingencies, Seller may not cancel this Agreement pursuant to 17C(1).

**(3) Seller right to Cancel: Buyer Contract Obligations:** Seller, after first giving Buyer a Notice to Buyer to Perform (as specified below), may cancel this Agreement in writing and authorize return of Buyer's deposit for any of the following reasons: **(i)** if Buyer fails to deposit funds as required by 2A or 2B; **(ii)** if the funds deposited pursuant to 2A or 2B are not good when deposited; **(iii)** if Buyer fails to provide a letter as required by 2H; **(iv)** if Buyer fails to provide verification as required by 2I or 2M; or **(v)** if Seller reasonably disapproves of the verification provided by 2I or 2M. **Seller is not required to give Buyer a Notice to Buyer to Perform regarding Close Of Escrow.**

**(4) Notice To Buyer To Perform:** The Notice to Buyer to Perform (C.A.R. Form NBP) shall **(i)** be in writing; **(ii)** be signed by Seller and **(iii)** give Buyer at least 24 (or ☐ __72__ ) hours (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A Notice to Buyer to Perform may not be given any earlier than **2 Days** Prior to the expiration of the applicable time for Buyer to remove a contingency or cancel the Agreement or meet an 17C(3) obligation.

**D.  EFFECT OF BUYER'S REMOVAL OF CONTINGENCIES:** If Buyer removes, in writing, any contingency or cancellation rights, unless otherwise specified in a separate written agreement between Buyer and Seller, Buyer shall conclusively be deemed to have: **(i)** completed all Buyer Investigations, and review of reports and other applicable information and disclosures pertaining to that contingency or cancellation right; **(ii)** elected to proceed with the transaction; and **(iii)** assumed all liability, responsibility, and expense for Repairs or corrections pertaining to that contingency or cancellation right, or for inability to obtain financing.

Copyright © 1991-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
CPA REVISED 10/02 (PAGE 5 OF 10)

Buyer's Initials ( _____ )( _____ )
Seller's Initials ( _____ )( _____ )
Reviewed by _____ Date _____



**COMMERCIAL PROPERTY PURCHASE AGREEMENT (CPA PAGE 5 OF 10)**          Kettner.zfx

**2487 Kettner Blvd**

Property Address: **San Diego, CA  92101**                                    Date: **January 16, 2010**

**E. EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, Buyer and Seller agree to Sign mutual instructions to cancel the sale and escrow and release deposits, less fees and costs, to the party entitled to the funds. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. **Release of funds will require mutual Signed release instructions from Buyer and Seller, judicial decision or arbitration award.**

18. **FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final inspection of the Property within **5 (or _____ )** Days Prior to Close Of Escrow, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: **(i)** the Property is maintained pursuant to paragraph 11A; **(ii)** Repairs have been completed as agreed; and **(iii)** Seller has complied with Seller's other obligations under this Agreement.

19. **ENVIRONMENTAL HAZARD CONSULTATION:** Buyer and Seller acknowledge: **(i)** Federal, state, and local legislation impose liability upon existing and former owners and users of real property, in applicable situations, for certain legislatively defined, environmentally hazardous substances; **(ii)** Broker(s) has/have made no representation concerning the applicability of any such Law to this transaction or to Buyer or to Seller, except as otherwise indicated in this Agreement; **(iii)** Broker(s) has/have made no representation concerning the existence, testing, discovery, location and evaluation of/for, and risks posed by, environmentally hazardous substances, if any, located on or potentially affecting the Property; and **(iv)** Buyer and Seller are each advised to consult with technical and legal experts concerning the existence, testing, discovery, location and evaluation of/for, and risks posed by, environmentally hazardous substances, if any, located on or potentially affecting the Property.

20. **AMERICANS WITH DISABILITIES ACT:** The Americans With Disabilities Act ("ADA") prohibits discrimination against individuals with disabilities. The ADA affects almost all commercial facilities and public accommodations. The ADA can require, among other things, that buildings be made readily accessible to the disabled. Different requirements apply to new construction, alterations to existing buildings, and removal of barriers in existing buildings. Compliance with the ADA may require significant costs. Monetary and injunctive remedies may be incurred if the Property is not in compliance. A real estate broker does not have the technical expertise to determine whether a building is in compliance with ADA requirements, or to advise a principal on those requirements. Buyer and Seller are advised to contact an attorney, contractor, architect, engineer or other qualified professional of Buyer's or Seller's own choosing to determine to what degree, if any, the ADA impacts that principal or this transaction.

21. **LIQUIDATED DAMAGES: If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. Buyer and Seller agree that this amount is a reasonable sum given that it is impractical or extremely difficult to establish the amount of damages that would actually be suffered by Seller in the event Buyer were to breach this Agreement. Release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award.**

| Buyer's Initials _____ / _____ | Seller's Initials _____ / _____ |
|---|---|

22. **DISPUTE RESOLUTION:**

    A. **MEDIATION:** Buyer and Seller agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action. Paragraphs 22B(2) and (3) below apply to mediation whether or not the Arbitration provision is initialed. Mediation fees, if any, shall be divided equally among the parties involved. If, for any dispute or claim to which this paragraph applies, any party commences an action without first attempting to resolve the matter through mediation, or refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED.

    B. **ARBITRATION OF DISPUTES: (1) Buyer and Seller agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration, including and subject to paragraphs 22B(2) and (3) below. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of real estate transactional Law experience, unless the parties mutually agree to a different arbitrator, who shall render an award in accordance with substantive California Law. The parties shall have the right to discovery in accordance with Code of Civil Procedure §1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part III of the California Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction. Interpretation of this agreement to arbitrate shall be governed by the Federal Arbitration Act.**

    **(2) EXCLUSIONS FROM MEDIATION AND ARBITRATION:** The following matters are excluded from mediation and arbitration: **(i)** a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage, or installment land sale contract as defined in Civil Code §2985; **(ii)** an unlawful detainer action; **(iii)** the filing or enforcement of a mechanic's lien; and **(iv)** any matter that is within the jurisdiction of a probate, small claims, or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver of the mediation and arbitration provisions.

    **(3) BROKERS:** Buyer and Seller agree to mediate and arbitrate disputes or claims involving either or both Brokers, consistent with 22A and B, provided either or both Brokers shall have agreed to such mediation or arbitration prior to, or within a reasonable time after, the dispute or claim is presented to Brokers. Any election by either or both Brokers to participate in mediation or arbitration shall not result in Brokers being deemed parties to the Agreement.

Copyright © 1991-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
**CPA REVISED 10/02 (PAGE 6 OF 10)**

| Buyer's Initials ( ___ )( ___ ) |
|---|
| Seller's Initials ( ___ )( ___ ) |
| Reviewed by _____ Date _____ |



**COMMERCIAL PROPERTY PURCHASE AGREEMENT (CPA PAGE 6 OF 10)**

Kettner.zfx

Property Address: 2487 Kettner Blvd  San Diego, CA  92101 _____  Date: January 16, 2010 ____

**"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES 'PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."**

**"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."**

| Buyer's Initials _____ / _____ | Seller's Initials _____ / _____ |
|---|---|

**23. ASSIGNMENT:** Buyer shall not assign all or any part of Buyer's interests in this Agreement without first having obtained the written consent of Seller. Such consent shall not be unreasonably withheld, unless otherwise agreed in writing. Any total or partial assignment shall not relieve Buyer of Buyer's obligations pursuant to this Agreement.

**24. SUCCESSORS AND ASSIGNS:** This Agreement shall be binding upon, and inure to the benefit of, Buyer and Seller and their respective successors and assigns, except as otherwise provided herein.

**25. COPIES:** Seller and Buyer each represent that Copies of all reports, documents, certificates, approvals and other documents that are furnished to the other are true, correct and unaltered Copies of the original documents, if the originals are in the possession of the furnishing party.

**26. NOTICES:** Whenever notice is given under this Agreement, each notice shall be in writing, and shall be delivered personally, by facsimile, or by mail, postage prepaid. Notice shall be delivered to the address set forth below the recipient's signature of acceptance. Either party may change its notice address by providing notice to the other party.

**27. AUTHORITY:** Any person or persons signing this Agreement represent(s) that such person has full power and authority to bind that person's principal, and that the designated Buyer and Seller has full authority to enter into and perform this Agreement. Entering into this Agreement, and the completion of the obligations pursuant to this contract, does not violate any Articles of Incorporation, Articles of Organization, ByLaws, Operating Agreement, Partnership Agreement or other document governing the activity of either Buyer or Seller.

**28. GOVERNING LAW:** This Agreement shall be governed by the Laws of the state of California.

**29. PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless otherwise agreed in writing, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, rents, HOA regular, special, and emergency dues and assessments imposed prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are now a lien. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special assessments that are now a lien but not yet due. Property will be reassessed upon change of ownership. Any supplemental tax bills shall be paid as follows: **(i)** for periods after Close Of Escrow, by Buyer; and **(ii)** for periods prior to Close Of Escrow, by Seller. TAX BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.

**30. WITHHOLDING TAXES:** Seller and Buyer agree to execute any instrument, affidavit, statement or instruction reasonably necessary to comply with federal (FIRPTA) and California withholding Law, if required (C.A.R. Form AS).

**31. MULTIPLE LISTING SERVICE/PROPERTY DATA SYSTEM:** If Broker is a participant of a Multiple Listing Service ("MLS") or Property Data System ("PDS"), Broker is authorized to report to the MLS or PDS a pending sale and, upon Close Of Escrow, the terms of this transaction to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS or PDS.

**32. EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local antidiscrimination Laws.

**33. ATTORNEY FEES:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the nonprevailing Buyer or Seller, except as provided in paragraph 22A.

**34. SELECTION OF SERVICE PROVIDERS:** If Brokers refer Buyer or Seller to persons, vendors, or service or product providers ("Providers"), Brokers do not guarantee the performance of any Providers. Buyer and Seller may select ANY Providers of their own choosing.

**35. TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the parties are incorporated in this Agreement. Its terms are intended by the parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. **Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.**

Copyright © 1991-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
**CPA REVISED 10/02 (PAGE 7 OF 10)**

Buyer's Initials (_____)(_____)
Seller's Initials (_____)(_____)
| Reviewed by _____ Date _____ |



**COMMERCIAL PROPERTY PURCHASE AGREEMENT (CPA PAGE 7 OF 10)**

Kettner zfx

*2487 Kettner Blvd*
Property Address: *San Diego, CA  92101*      Date: *January 16, 2010*

**36. OTHER TERMS AND CONDITIONS**, including attached supplements:
   **A.** ☒ Buyer Inspection Advisory (C.A.R. Form BIA)
   **B.** ☐ Seller Financing Addendum and Disclosure (C.A.R. Form SFA)
   **C.** ☐ Purchase Agreement Addendum (C.A.R. Form PAA paragraph numbers:        )
   **D.** ☐ Buyer Intent To Exchange Supplement (C.A.R. Form BES)
   **E.** ☐ Seller Intent to Exchange Supplement (C.A.R. Form SES)
   **F.** *1.80,000 shares of LNCM (Lenco Mobile) Stock as consideration for the $260,000 Increase Deposit. Seller Contingency for approval of stock for a period of 7 Days, after Buyer has given Seller the stock information. If Seller disapproves stock, within the 7 Days after the Seller receiving the stock information, then Seller may unilaterally Cancel Escrow. If Seller does not Disapprove stock, in writing then the Contingency will automatically be removed by the passing of time, & no Contingency removal will be required in writing. Within the 7 days, Seller may request a 1 week extension of time for further stock investigations, if necessary. Upon Contingency removal by Seller, Seller has agreed to the terms of the stock, labeled; "SUBSCRIPTION AGREEMENT".*
      *2. Buyer acknowledges that Property is subject to BK-11 Court Approval.*

**37. DEFINITIONS:** As used in this Agreement:
   **A. "Acceptance"** means the time the offer or final counter offer is accepted in writing by a party and is delivered to and personally received by the other party or that party's authorized agent in accordance with this offer or a final counter offer.
   **B. "Agreement"** means the terms and conditions of this accepted Commercial Property Purchase Agreement and any accepted counter offers and addenda.
   **C. "C.A.R. Form"** means the specific form referenced, or another comparable form agreed to by the parties.
   **D. "Close Of Escrow"** means the date the grant deed, or other evidence of transfer of title, is recorded. If the scheduled close of escrow falls on a Saturday, Sunday or legal holiday, then close of escrow shall be the next business day after the scheduled close of escrow date.
   **E. "Copy"** means copy by any means including photocopy, NCR, facsimile and electronic.
   **F. "Days"** means calendar days, unless otherwise required by Law.
   **G. "Days After"** means the specified number of calendar days after the occurrence of the event specified, not counting the calendar date on which the specified event occurs, and ending at 11:59PM on the final day.
   **H. "Days Prior"** means the specified number of calendar days before the occurrence of the event specified, not counting the calendar date on which the specified event is scheduled to occur.
   **I. "Electronic Copy" or "Electronic Signature"** means, as applicable, an electronic copy or signature complying with California Law. Buyer and Seller agree that electronic means will not be used by either one to modify or alter the content or integrity of the Agreement without the knowledge and consent of the other.
   **J. "Law"** means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.
   **K. "Notice to Buyer to Perform"** means a document (C.A.R. Form NBP), which shall be in writing and Signed by Seller and shall give Buyer at least 24 hours **(or as otherwise specified in paragraph 17C(4))** to remove a contingency or perform as applicable.
   **L. "Repairs"** means any repairs (including pest control), alterations, replacements, modifications and retrofitting of the Property provided for under this Agreement.
   **M. "Signed"** means either a handwritten or electronic signature on an original document, Copy or any counterpart.
   **N. Singular and Plural** terms each include the other, when appropriate.
**38. BROKERAGE:** Neither Buyer nor Seller has utilized the services of, or for any other reason owes compensation to, a licensed real estate broker (individual or corporate), agent, finder, or other entity, other than as specified in this Agreement, in connection with any act relating to the Property, including, but not limited to, inquiries, introductions, consultations and negotiations leading to this Agreement. Buyer and Seller each agree to indemnify, defend, and hold the other, the Brokers specified herein and their agents, harmless from and against any costs, expenses or liability for compensation claimed inconsistent with the warranty and representations in this paragraph.
**39. AGENCY:**
   **A. POTENTIALLY COMPETING BUYERS AND SELLERS:** Buyer and Seller each acknowledge receipt of a disclosure of the possibility of multiple representation by the Broker representing that principal. This disclosure may be part of a listing agreement, buyer-broker agreement or separate document (C.A.R. Form DA). Buyer understands that Broker representing Buyer may also represent other potential buyers, who may consider, make offers on or ultimately acquire the Property. Seller understands that Broker representing Seller may also represent other sellers with competing properties of interest to this Buyer.
   **B. CONFIRMATION:** The following agency relationships are hereby confirmed for this transaction:
   Listing Agent          *Best Financial Consultants*          (Print Firm Name) is the agent
   of (check one): ☐ the Seller exclusively; or ☐ both the Buyer and Seller.
   Selling Agent          *Best Financial Consultants*          (Print Firm Name) (if not same
   as Listing Agent) is the agent of (check one): ☐ the Buyer exclusively; or ☐ the Seller exclusively; or ☐ both the Buyer and Seller.
   Seller. Real Estate Brokers are not parties to the Agreement between Buyer and Seller.

Copyright © 1991-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
**CPA REVISED 10/02 (PAGE 8 OF 10)**

Buyer's Initials (       )(       )
Seller's Initials (       )(       )

Reviewed by _____ Date _____


EQUAL HOUSING OPPORTUNITY

**COMMERCIAL PROPERTY PURCHASE AGREEMENT (CPA PAGE 8 OF 10)**

Kettner.zfx

2487 Kettner Blvd
Property Address: San Diego, CA  92101                                    Date: January 16, 2010

**40. JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**

A. **The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder,** which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: 1, 2, 4, 5, 16, 17E, 29, 30, 35, 36B-F, 37, 40, 42, 45A, 46 and paragraph D of the section titled Real Estate Broker on page 10. If a Copy of the separate compensation agreement(s) provided for in paragraph 42 or 45A, or paragraph D of the section titled Real Estate Broker on page 10 is deposited with Escrow Holder by Broker, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned. Buyer and Seller will receive Escrow Holder's general provisions directly from Escrow Holder and will execute such provisions upon Escrow Holder's request. To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller will execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow.

B. A Copy of this Agreement shall be delivered to Escrow Holder within **3** business days after Acceptance (or ☐ _____). Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement.

C. Brokers are a party to the Escrow for the sole purpose of compensation pursuant to paragraphs 42, 45A and paragraph D of the section titled Real Estate Broker on page 10. Buyer and Seller irrevocably assign to Brokers compensation specified in paragraphs 42 and 45A, respectively, and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow, or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Escrow Holder shall immediately notify Brokers: (i) if Buyer's initial or any additional deposit is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or (ii) if Buyer and Seller instruct Escrow Holder to cancel escrow.

D. A Copy of any amendment that affects any paragraph for which Escrow Holder is responsible shall be delivered to Escrow Holder within 2 business days after mutual execution of the amendment.

**41. SCOPE OF BROKER DUTY:** Buyer and Seller acknowledge and agree that: Brokers: (i) do not decide what price Buyer should pay or Seller should accept; (ii) do not guarantee the condition of the Property (iii) do not guarantee the performance, adequacy or completeness of inspections, services, products or repairs provided or made by Seller or others; (iv) shall not be responsible for identifying defects that are not known to Broker(s); (v) shall not be responsible for inspecting public records or permits concerning the title or use of the Property; (vi) shall not be responsible for identifying location of boundary lines or other items affecting title; (vii) shall not be responsible for verifying square footage, representations of others or information contained in inspection reports, MLS or PDS, advertisements, flyers or other promotional material, unless otherwise agreed in writing; (viii) shall not be responsible for providing legal or tax advice regarding any aspect of a transaction entered into by Buyer or Seller in the course of this representation; and (ix) shall not be responsible for providing other advice or information that exceeds the knowledge, education and experience required to perform real estate licensed activity. Buyer and Seller agree to seek legal, tax, insurance, title and other desired assistance from appropriate professionals.

**42. BROKER COMPENSATION FROM BUYER:** If applicable, upon Close Of Escrow, **Buyer** agrees to pay compensation to Broker as specified in a separate written agreement between Buyer and Broker.

**43. TERMS AND CONDITIONS OF OFFER:** This is an offer to purchase the Property on the above terms and conditions. All paragraphs with spaces for initials by Buyer and Seller are incorporated in this Agreement only if initialed by all parties. If at least one but not all parties initial, a counter offer is required until agreement is reached. Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance. Buyer has read and acknowledges receipt of a Copy of the offer and agrees to the above confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing.

**44. EXPIRATION OF OFFER:** This offer shall be deemed revoked and the deposit shall be returned, unless the offer is Signed by Seller, and a Copy of the Signed offer is personally received by Buyer, or by _____ who is authorized to receive it by 5:00 PM on the third Day after this offer is signed by Buyer (OR, if checked ☐ by _____ (date), at _____ ☐ AM ☐ PM).

Buyer Matthew ~~Pirval~~ *PIRVUL*
By _____                                        Date 1/16/10
Print Name MATTHEW PIRVUL
Address 2217 VIA BIANCA Oceanside CA 92054 City Oceanside    State CA Zip 92054
Telephone 760 429-4660 Fax _____ E-mail _____

Buyer eAccounts
By _____ (PRESIDENT)                           Date 1/16/10
Print Name MATTHEW PIRVUL
Address Po Box 231544 Encinitas CA 92023 City Encinitas    State CA Zip 92023
Telephone 780 866-6859 Fax _____ E-mail _____
Notice Address, If Different _____

| | |
|---|---|
| Buyer's Initials ( ___ )( ___ ) | |
| Seller's Initials ( ___ )( ___ ) | |
| Reviewed by _____ Date _____ | |

Copyright © 1991-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
CPA REVISED 10/02 (PAGE 9 OF 10)

**COMMERCIAL PROPERTY PURCHASE AGREEMENT (CPA PAGE 9 OF 10)**                 Kettner.zfx

**2487 Kettner Blvd**
Property Address: *San Diego, CA   92101* _____ Date: *January 16, 2010* _____

**45. BROKER COMPENSATION FROM SELLER:**
   A. Upon Close Of Escrow, **Seller** agrees to pay compensation to Broker as specified in a separate written agreement between Seller and Broker.
   B. If escrow does not close, compensation is payable as specified in that separate written agreement.

**46. ACCEPTANCE OF OFFER: Seller** warrants that Seller is the owner of the Property, or has the authority to execute this Agreement. Seller accepts the above offer, agrees to sell the Property on the above terms and conditions, and agrees to the above confirmation of agency relationships. Seller has read and acknowledges receipt of a Copy of this Agreement, and authorizes Broker to deliver a Signed Copy to Buyer.
☑ (If checked) **SUBJECT TO ATTACHED COUNTER OFFER, DATED** ____ *1/21/10* _____

Seller *Panoche Valley LLC* _____
By *Todd Brown, Manager* _____ Date *1/21/10* _____
Print name *Todd Brown* _____
Address *2483 Kettner Blvd* _____ City *San Diego* ___ State *CA* Zip *92101*
Telephone *858-752-2978* Fax *619-795-8484* E-mail *tbvette57@hotmail.com*

Seller _____
By _____ Date _____
Print name _____
Address _____ City _____ State ___ Zip _____
Telephone _____ Fax _____ E-mail _____
Notice Address, If Different _____

( _____ / _____ ) **Confirmation of Acceptance:** A Copy of Signed Acceptance was personally received by Buyer or Buyer's
    (Initials)     authorized agent on (date) _____ at _____ ☐ AM ☐ PM. **A binding Agreement is created when a Copy of Signed Acceptance is personally received by Buyer or Buyer's authorized agent whether or not confirmed in this document. Completion of this confirmation is not legally required in order to create a binding Agreement; it is solely intended to evidence the date that Confirmation of Acceptance has occurred.**

---

**REAL ESTATE BROKERS:**
A. Real Estate Brokers are not parties to the Agreement between Buyer and Seller.
B. Agency relationships are confirmed as stated in paragraph 39 above.
C. If specified in paragraph 2A, Agent who submitted offer for Buyer acknowledges receipt of deposit.
D. **COOPERATING BROKER COMPENSATION:** Listing Broker agrees to pay Cooperating Broker (**Selling Firm**) and Cooperating Broker agrees to accept, out of Listing Broker's proceeds in escrow: **(i)** the amount specified in the MLS or PDS, provided Cooperating Broker is a Participant of the MLS or PDS in which the property is offered for sale or a reciprocal MLS or PDS, or **(ii)** ☐ (if checked) the amount specified in a separate written agreement (C.A.R. Form CBC) between Listing Broker and Cooperating Broker.

Real Estate Broker (Selling Firm) *Best Financial Consultants* _____ DRE Lic. # *00153138* __
By ___ *Ben Williams* DRE Lic. # *01799217* Date *January 5, 2010* _____
Address *2408 La Costa Ave* _____ City *Carlsbad* State *CA* Zip *92009*
Telephone *(760) 815-1400* Fax _____ E-mail *bfc@me.com* _____

Real Estate Broker (Listing Firm) *Best Financial Consultants* _____ DRE Lic. # *00153138* __
By ___ *Ben Williams* DRE Lic. # *01799217* Date *January 5, 2010* _____
Address *2408 La Costa Ave* _____ City *Carlsbad* State *CA* Zip *92009*
Telephone *(760) 815-1400* Fax _____ E-mail *bfc@me.com* _____

---

**ESCROW HOLDER ACKNOWLEDGMENT:**
Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked) ☐ a deposit in the amount of $ _____ ),
counter offer numbers _____ and _____
_____ , and agrees to act as Escrow Holder subject to paragraph 40 of this Agreement, any supplemental escrow instructions and the terms of Escrow Holder's general provisions.

Escrow Holder is advised that the date of Confirmation of Acceptance of the Agreement as between Buyer and Seller is _____
Escrow Holder _____ Escrow # _____
By _____ Date _____
Address _____
Phone/Fax/E-mail *//*
Escrow Holder is licensed by the California Department of ☐ Corporations, ☐ Insurance, ☐ Real Estate. License # _____

---

( _____ / _____ )   **REJECTION OF OFFER:** No counter offer is being made. This offer was reviewed and rejected by Seller on
  (Seller's Initials)                         (Date)

THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

CPA REVISED 10/02 (PAGE 10 OF 10)

Reviewed by _____ Date _____

**COMMERCIAL PROPERTY PURCHASE AGREEMENT (CPA PAGE 10 OF 10)**

Kettner zfx

eAccounts Inc.  04/07
PO Box 231544
Encinitas, CA 92023

UNION BANK OF CALIFORNIA
2723 VISTA WAY
OCEANSIDE, CA 92054

16-49/1220

10219

1/10/10

PAY TO THE
ORDER OF  Fidelity Escrow

$ 1,000

One Thousand & 00/100                                              DOLLARS

2483 Kettner Blvd.

⑆010219⑆ ⑆122000496⑆ 0830051961⑆

# EXHIBIT 6

# Fidelity National Title Company

760 Garden View Court #100    Encinitas, CA  92024
(760) 479-2757    FAX (760) 479-2752

## AS A MATTER OF CLARIFICATION

Date:  August 20, 2010
Escrow No.:  4322423-TS
Escrow Officer:  Tim Szucs

| | | |
|---|---|---|
| Buyer(s) have deposited with escrow, receipt of which is hereby acknowledged, an initial deposit in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ | 1,000.00 |
| Buyer will execute and deliver a new First conventional Deed of Trust in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ | 340,000.00 |
| Buyer will execute and deliver a new Second seller carry back Deed of Trust in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ | 50,000.00 |
| Prior to the close of escrow, Buyer will hand you the balance of down payment (plus closing costs, if applicable) the sum of . . . . . . . . . . . . . . . . . . . . . . | $ | 260,000.00 |
| **TOTAL CONSIDERATION**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ | **650,000.00** |

AND, on or before **August 27, 2010**, Escrow Holder will be handed additional funds and/or instruments required to enable Escrow Holder to comply with these instructions, which Escrow Holder is instructed to use when in a position to procure/issue a **CLTA Standard Coverage Policy - 1990**·coverage form Policy of Title Insurance from **Fidelity National Title Insurance Company** with a liability of **$650,000.00**, covering the following described property  located in the City of **San Diego**, County of **San Diego**, State of **California**:

SEE EXHIBIT ONE ATTACHED HERETO AND MADE A PART HEREOF

SELLER/TRANSFEROR STATES THAT PROPERTY ADDRESS(ES) IS/ARE:
**2487 Kettner Boulevard, San Diego, CA  92101**

SHOWING TITLE VESTED IN:
eAccounts, Inc., a California Corporation

FREE FROM ENCUMBRANCES EXCEPT:

1. Current general and special taxes for the fiscal year in which this escrow closes, and taxes for the ensuing year, if any, a lien not yet due and payable;
2. The lien of supplemental taxes, if any, assessed pursuant to the provisions of Chapter 3.5 (commencing with Section 75) of the Revenue and Taxation Code of the State of California;
3. Bonds and Assessments with no delinquent payments, if any;
4. Covenants, conditions restrictions, reservations, easements and rights of way now of record, if any;
5. A First Deed of Trust, to record, securing a note in the amount of $340,000.00 in favor of Triton Equities.
6. A Second Deed of Trust, to record, securing a note in the amount of $50,000.00 in favor of Panoche Valley LLC.

## PRORATIONS:
Prorate as of Close of Escrow, on the basis of a 30 day month:
- Taxes

## CONSUMMATION of this escrow is CONTINGENT UPON THE FOLLOWING:

1. **NEW LOAN:**  Buyer obtaining and property qualifying for a new conventional First trust deed loan securing a note in the amount of $340,000.00 in favor of Triton Equities.   Said loan shall bear interest at a rate not to exceed 10.7500% fixed per annum, payable at approximately $3,045.83 per month, or more, , balance due  5 years.  Buyer's signature on lender's documents shall be deemed their approval and acceptance of the terms and conditions of said new loan and Escrow Holder's authorization to comply with lender's requirements.

   Buyer agrees to provide new hazard insurance policy acceptable to lender and to pay premium for same prior to the close of escrow.

2. **NEW LOAN:**   Buyer to execute a new Second Trust Deed and Note, to record on your usual form, dated during escrow, in the amount of $50,000.00, in favor of Panoche Valley LLC, OR ORDER, payable at the place as designated by holder hereof,  at the rate of 6.5000% fixed per annum,

*Continued on following page*

Initials:

Date:        August 20, 2010
Escrow No:    4322423-TS

payable at $270.83 per month, or more, , interest only,  and continuing until 09/01/2011, at which time the remaining unpaid principal balance and interest accrued thereon shall be immediately due and payable.  Escrow holder is authorized and instructed to endorse said Note with the date interest is to accrue, insert the appropriate payment dates and the maturity date on the face of the Note, over and above the signatures of the Buyer, at close of escrow without further approval from the parties herein.

Escrow Holder is relieved of any and all liability and/or responsibility with respect to the terms and conditions of said Note and Deed of Trust including, but not limited to, the validity, sufficiency, enforceability, and/or collectability of same.  The undersigned hereby acknowledge they have been advised by Escrow Holder to seek their own independent counsel as to all matters concerning the recital(s), if any, contained therein.

The parties hereto recognize and acknowledge that the comprehensive National Energy Policy Act of 1992, effective January 1, 1992, provides in part that in the event this transaction involves a seller-financed residential sale and if either Buyer or Seller, or both, claim a deduction for qualified residential interest, or if any person receives or accrues interest from seller-provided financing, such person (both payor and payee) shall include on his or her tax return the name, address, and taxpayer identification number of the person to whom (from whom) the interest is paid (or received).  Exchange of tax identification numbers between Buyer and Seller shall be made by the parties.

Said Note and/or Trust Deed to contain the following recitals:
DUE ON SALE:  Anything herein to the contrary notwithstanding, in the event of a voluntary sale, transfer or conveyance of all or any portion of the property described herein, any indebtedness or obligation hereunder, shall at the option of the holder hereof, immediately become due and payable.

BALLOON PAYMENT:  This note is subject to Section 2966 of the Civil Code, which provides that the holder of this note shall give written notice to the Trustor, or his successor in interest, of prescribed information at least 90 and not more than 150 days before any balloon payment is due.

## ADDITIONAL INSTRUCTIONS:

3.    ZONE DISCLOSURE: Seller to pay for zone disclosure report at the close of escrow.

## MEMORANDUM ITEMS:
MATTERS OF MEMORANDUM WITH WHICH ESCROW HOLDER IS NOT TO BE CONCERNED, but are items of agreement between parties, these items are not intended to modify or supersede that original purchase contract which parties have executed outside of this escrow.

4.    STOCK: Buyer and seller acknowledge any reference to stock is handled entirely outside of escrow.

## GENERAL INSTRUCTIONS:

1.    Seller is aware that interest on the existing loan(s) does not stop accruing at close of escrow, but continues until the actual day of receipt of the payoff by Lender.

      Seller is aware that interest will accrue through weekends or holidays.

      Seller is aware he/she/they are responsible for payment of all of such interest and will indemnify and hold Escrow Holder harmless in connection with the payment of such interest.

2.    Checks to be issued at Close of Escrow: I/We the undersigned Buyer/Borrower/Seller hereby acknowledge that we are aware that Fidelity National Title Company will issue a check payable to the undersigned in payment of Seller's proceeds/Borrower's proceeds or Buyer's excess deposit refund. I/We further acknowledge and agree that said check will be presented to the bank for deposit as soon as possible after receipt, and collection and payment of the funds will only be done through the regular banking channels.

      In addition, in the event there are liens to be paid on the undersigned's behalf, we hereby also acknowledge that I/we will not use the pay-by-phone electronic system to pay/collect the funds as Fidelity National Title Company will not honor such payments. The parties herein agree to be responsible for any stop payment and reissue charges and/or losses that may be incurred in connection with any and all electronic debits to Fidelity National Title Company's Trust Accounts.

3.    Buyer acknowledges deposit of balance of funds to close escrow to be in the form of wire transfer, certified check, cashier's check or teller's check payable to Fidelity National Title Company

*Continued on following page*                                    Initials: _____

Date:        August 20, 2010                                                                      Page 3
Escrow No:    4322423-TS

pursuant to the "Deposit of Funds", Paragraph 1 contained in the General Provisions attached hereto and made a part hereof.

4.  The undersigned hereby authorize and instruct Escrow Holder to charge each party to the escrow for their respective Federal Express and/or special mail handling/courier fees.  Unless specified in writing, by the undersigned, Escrow Holder is authorized to select special mail/delivery or courier service to be used.

5.  You are instructed to debit Seller's account and pay Seller's usual costs and charges including but not limited to Seller's portion of the escrow fee, ALTA Policy of Title Insurance, document preparation, documentary transfer tax, and recording of reconveyance(s), if any.  In the event the Buyer's new loan is an FHA or VA loan, charges shall be debited to the Seller in accordance with FHA and VA regulations.

6.  You are instructed to debit Buyer's account and pay Buyer's usual costs and charges including but not limited to Buyer's portion of the escrow fee, document preparation, recording of deed(s) of trust, if any, ALTA Policy of Title Insurance, if any, and new loan charges as instructed by lender, if any.  In the event the new loan is an FHA or VA loan, charges shall be debited to the Buyer in accordance with FHA and VA regulations.

THE FOREGOING INSTRUCTIONS AND THOSE "GENERAL PROVISIONS" ATTACHED HERETO AND MADE A PART HEREOF ARE APPROVED AND ACCEPTED IN THEIR ENTIRETY AS FULLY SET OUT IN THIS PARAGRAPH.  EACH OF THE UNDERSIGNED BUYER(S) HEREBY AUTHORIZE ESCROW AGENT TO FURNISH COPIES OF CLOSING STATEMENTS TO LENDER AND/OR BROKER INVOLVED.

*BUYER'S SIGNATURE:*

eAccounts, Inc., a California corporation
By: _____                    Date: 8/24/10
    Matthew Pirvul

**Forwarding Address:**
2213 Via Blanca
Street Address
Oceanside  CA  92054
City, State, Zip
760 429 4660
Home Phone Number

I/WE HAVE RECEIVED A COPY OF THESE INSTRUCTIONS.

*SELLER'S SIGNATURE:*

Panoche Valley LLC, a Limited Liability Company
By: _____                    Date: 8/20/10
    Todd Brown

**Forwarding Address:**
2483 Kettner Blvd
Street Address
San Diego,  CA 92101
City, State, Zip
858-752-2978
Home Phone Number

**END OF INSTRUCTIONS.**

Date:        August 20, 2010
Escrow No:   4322423-TS

## GENERAL PROVISIONS

**1. DEPOSIT OF FUNDS**

The law dealing with the disbursement of funds requires that all funds be available for withdrawal as a matter of right by the title entity's escrow and/or sub escrow account prior to disbursement of any funds. Only cash or wire transferred funds can be given immediate availability upon deposit. Cashier's checks, teller's checks and Certified checks may be available one business day after deposit. All other funds such as personal, corporate or partnership checks and drafts are subject to mandatory holding periods which may cause material delays in disbursement of funds in this escrow. In order to avoid delays, all fundings should be wire transfer. Outgoing wire transfers will not be authorized until confirmation of the respective incoming wire transfer or of availability of deposited checks.

Deposit of funds into general escrow account unless instructed otherwise. You may instruct Escrow Holder to deposit your funds into an interest bearing account by signing and returning the "Escrow Instructions - Interest Bearing Account", which has been provided to you. If you do not so instruct us, then all funds received in this escrow shall be deposited with other escrow funds in one or more general escrow trust accounts, which include both non-interest bearing demand accounts and other depository accounts of Escrow Holder, in any state or national bank or savings and loan association insured by the Federal Deposit Insurance Corporation (the "depository institutions") and may be transferred to other such escrow trust accounts of Escrow Holder or one of its affiliates, either within or outside the State of California. A general escrow trust account is restricted and protected against claims by third parties and creditors of Escrow Holder and its affiliates.

Receipt of benefits by Escrow Holder and affiliates. The parties to this escrow acknowledge that the maintenance of such general escrow trust accounts with some depository institutions may result in Escrow Holder or its affiliates being provided with an array of bank services, accommodations or other benefits by the depository institution. Some or all of these benefits may be considered interest due you under California Insurance Code Section 12413.5. Escrow Holder or its affiliates also may elect to enter into other business transactions with or obtain loans for investment or other purposes from the depository institution. All such services, accommodations, and other benefits shall accrue to Escrow Holder or its affiliates and Escrow Holder shall have no obligation to account to the parties to this escrow for the value of such services, accommodations, interest or other benefits.

Said funds will not earn interest unless the instructions otherwise specifically state that funds shall be deposited in an interest-bearing account. All disbursements shall be made by check of Fidelity National Title Company. The principals to this escrow are hereby notified that the funds deposited herein are insured only to the limit provided by the Federal Deposit Insurance Corporation. Any instruction for bank wire will provide reasonable time or notice for Escrow Holder's compliance with such instruction. Escrow Holder's sole duty and responsibility shall be to place said wire transfer instructions with its wiring bank upon confirmation of (1) satisfaction of conditions precedent or (2) document recordation at close of escrow. Escrow Holder will NOT be held responsible for lost interest due to wire delays caused by any bank or the Federal Reserve System, and recommends that all parties make themselves aware of banking regulations with regard to placement of wires.

In the event there is insufficient time to place a wire upon any such confirmation or the wires have closed for the day, the parties agree to provide written instructions for an alternative method of disbursement. WITHOUT AN ALTERNATIVE DISBURSEMENT INSTRUCTION, FUNDS WILL BE HELD IN TRUST IN A NON-INTEREST BEARING ACCOUNT UNTIL THE NEXT OPPORTUNITY FOR WIRE PLACEMENT.

**2. PRORATIONS AND ADJUSTMENTS**

All prorations and/or adjustments called for in this escrow are to be made on the basis of a thirty (30) day month unless otherwise instructed in writing. You are to use information contained on last available tax statement, rental statement as provided by the Seller, beneficiary's statement and fire insurance policy delivered into escrow for the prorations provided for herein.

**3. SUPPLEMENTAL TAXES**

The within described property may be subject to supplemental real property taxes due to the change of ownership taking place through this escrow. Any supplemental real property taxes arising as a result of the transfer of the property to Buyer shall be the sole responsibility of Buyer and any supplemental real property taxes arising prior to the closing date shall be the sole responsibility of the Seller. TAX BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER.

**4. UTILITIES/POSSESSION**

Transfer of utilities and possession of the premises are to be settled by the parties directly and outside escrow.

**5. PREPARATION AND RECORDATION OF INSTRUMENTS**

Escrow Holder is authorized to prepare, obtain, record and deliver the necessary instruments to carry out the terms and conditions of this escrow and to order the policy of title insurance to be issued at close of escrow as called for in these instructions. Close of escrow shall mean the date instruments are recorded.

**6. AUTHORIZATION TO FURNISH COPIES**

You are authorized to furnish copies of these instructions, supplements, amendments, notices of cancellation and closing statements, to the Real Estate Broker(s) and Lender(s) named in this escrow.

**7. RIGHT OF CANCELLATION**

Any principal instructing you to cancel this escrow shall file notice of cancellation in your office in writing. You shall, within two (2) working days thereafter, deliver, one copy of such notice to each of the other principals at the addresses stated in this escrow. UNLESS WRITTEN OBJECTION TO CANCELLATION IS FILED IN YOUR OFFICE BY A PRINCIPAL WITHIN TEN (10) DAYS AFTER DATE OF SUCH DELIVERY, YOU ARE AUTHORIZED TO COMPLY WITH SUCH NOTICE AND DEMAND PAYMENT OF YOUR CANCELLATION CHARGES. If written objection is filed, you are authorized to hold all money and instruments in this escrow and take no further action until otherwise directed, either by the principals' mutual written instructions, or by final order of a court of competent jurisdiction.

**8. PERSONAL PROPERTY**

No examination or insurance as to the amount or payment of personal property taxes is required unless specifically requested.

By signing these General Provisions, the parties to the escrow hereby acknowledge that they are indemnifying the Escrow Holder against any and all matters relating to any "Bulk Sales" requirements, and instruct Escrow Agent to proceed with the closing of escrow without any consideration of matter of any nature whatsoever regarding "Bulk Sales" being handled through escrow.

**9. RIGHT OF RESIGNATION**

Escrow Holder has the right to resign upon ten (10) days written notice delivered to the principals herein. If such right is exercised, all funds and documents shall be returned to the party who deposited them and Escrow Holder shall have no liability hereunder.

**10. AUTHORIZATION TO EXECUTE ASSIGNMENT OF HAZARD INSURANCE POLICIES**

Either Buyer, Seller and/or Lender may hand you the insurance agent's name and insurance policy information, and you are to execute, on behalf of the principals hereto, form assignments of interest in any insurance policy (other than title insurance) called for in this escrow, forward assignment and policy to the insurance agent, requesting that the insurer consent to such transfer and/or attach a loss payable clause and/or such other endorsements as may be required, and forward such policy(s) to the principals entitled thereto. It is not your responsibility to verify the information handed you or the assignability of said insurance. Your sole duty is to forward said request to insurance agent at close of escrow.

Further, there shall be no responsibility upon the part of Escrow Holder to renew hazard insurance policy(s) upon expiration or otherwise keep it in force either during or subsequent to the close of escrow. Cancellation of any existing hazard insurance policies is to be handled directly by the principals, and outside of escrow.

**11. ACTION IN INTERPLEADER**

The principals hereto expressly agree that you, as Escrow Holder, have the absolute right at your election to file an action in interpleader requiring the principals to answer and litigate their several claims and rights among themselves and you are authorized to deposit with the clerk of the court all documents and funds held in this escrow. In the event such action is filed, the principals jointly and severally agree to pay your cancellation charges and costs, expenses and reasonable attorney's fees which you are required to expend or incur in such interpleader action, the amount thereof to be fixed and judgment therefor to be rendered by the court. Upon the filing of such action, you shall thereupon be fully released and discharged from all obligations imposed by the terms of this escrow or otherwise.

**12. TERMINATION OF AGENCY OBLIGATION**

If there is no action taken on this escrow within six (6) months after the "time limit date" as set forth in the escrow instructions or written extension thereof, your agency obligation shall terminate at your option and all documents, monies or other items held by you shall be returned to the parties depositing same. In the event of cancellation of this escrow, whether it be at the request of any of the principals or otherwise, the fees and charges due Fidelity National Title Company, including expenditures incurred and/or authorized shall be borne equally by the parties hereto (unless otherwise agreed to specifically).

**13. CONFLICTING INSTRUCTIONS**

Upon receipt of any conflicting instructions, you are to take no action in connection with this escrow until non-conflicting instructions are received from all of the principals to this escrow (subject to sections 7, 9, 11 and 12 above).

**14. REIMBURSEMENT ATTORNEY FEES/ESCROW HOLDER**

In the event that a suit is brought by any party or parties to these escrow instructions to which the Escrow Holder is named as a party which results in a judgment in favor of the Escrow Holder and against a principal or principals herein, the principals or principals' agent agree to pay said Escrow Holder all costs, expenses and reasonable attorney's fees which it may expend or incur in said suit, the amount thereof to be fixed and judgment therefore to be rendered by the court in said suit.

**15. DELIVERY/RECEIPT**

Delivery to principals as used in these instructions unless otherwise stated herein is to be by regular mail, and receipt is determined to be 72 hours after such mailing. All documents, balances and statements due to the undersigned are to be mailed to the address shown herein.

**16. STATE/FEDERAL CODE NOTIFICATIONS**

According to Federal Law, the Seller, when applicable, will be required to complete a sales activity report that will be utilized to generate a 1099 statement to the Internal Revenue Service.

*Continued on following page*

Initials: _____

Pursuant to State Law, prior to the close of escrow, Buyer will provide Escrow Holder with a Preliminary Change of Ownership Report. In the event said report is not handed to Escrow Holder for submission to the County in which subject property is located, upon recording of the Grant Deed, Buyers acknowledge that the applicable fee will be assessed by said County and Escrow Holder shall debit the account of Buyer for same at close of escrow.

**17. NON-RESIDENT ALIEN**

The Foreign Investment in Real Property Tax Act (FIRPTA), Title 26 U.S.C., Section 1445, and the regulations thereunder, provide in part, that a transferee (buyer) of a U.S. real property interest from a foreign person (non-resident alien) must withhold a tax equal to ten percent (10%) of the amount realized on the disposition, report the transaction and remit the withholding to the Internal Revenue Service within twenty (20) days after the transfer. **Fidelity National Title Company** has not and will not participate in any determination of whether the FIRPTA tax provisions are applicable to the subject transaction, nor act as a Qualified Substitute nor furnish tax advice to any party to the transaction. **Fidelity National Title Company** is not responsible for determining whether the transaction will qualify for an exception or an exemption and is not responsible for the filing of any tax forms with the Internal Revenue Service as they relate to FIRPTA. **Fidelity National Title Company** is not the agent for the Buyer for the purposes of receiving and analyzing any evidence or documentation that the Seller in the subject transaction is a U.S. citizen or resident alien. The Buyer is advised they must independently make a determination of whether the contemplated trasaction is taxable or non-taxable and the applicability of the withholding requirement to the subject transaction, and should seek the advice of their attorney or accountant. **Fidelity National Title Company** is not responsible for the payment of this tax and/or penalty and/or interest incurred in connection therewith and such taxes are not a matter covered by the Owner's Policy of Title Insurance to be issued to the Buyer. The Buyer is advised they bear full responsibility for compliance with the tax withholding requirement if applicable and/or for payment of any tax, interest, penalties and/or other expenses that may be due on the subject transaction.

**18. ENCUMBRANCES**

Escrow Holder is to act upon any statements furnished by a lienholder or his agent without liability or responsibility for the accuracy of such statements. Any adjustments necessary because of a discrepancy between the information furnished Escrow Holder and any amount later determined to be correct shall be settled between the parties direct and outside of escrow.

You are authorized, without the need for further approval, to debit my account for any fees and charges that I have agreed to pay in connection with this escrow, and for any amounts that I am obligated to pay to the holder of any lien or encumbrance to establish the title as insured by the policy of title insurance called for in these instructions. If for any reason my account is not debited for such amounts at the time of closing, I agree to pay them immediately upon demand, or to reimburse any other person or entity who has paid them.

**19. ENVIRONMENTAL ISSUES**

Fidelity National Title Company has made no investigation concerning said property as to environmental/toxic waste issues. Any due diligence required or needed to determine environmental impact as to forms of toxification, if applicable, will be done directly and by principals outside of escrow. Fidelity National Title Company is released of any responsibility and/or liability in connection therewith.

**20. USURY**

Escrow Holder is not to be concerned with any questions of usury in any loan or encumbrance involved in the processing of this escrow and is hereby released of any responsibility or liability therefore.

**21. DISCLOSURE**

Escrow Holder's knowledge of matters affecting the property, provided such facts do not prevent compliance with these instructions, does not create any liability or duty in addition to these instructions.

**22. FACSIMILE SIGNATURE**

Escrow Holder is hereby authorized and instructed that, in the event any party utilizes "facsimile" transmitted signed documents or instructions to Escrow Holder, you are to rely on the same for all escrow instruction purposes and the closing of escrow as if they bore original signatures.

**23. CLARIFICATION OF DUTIES**

Fidelity National Title Company serves ONLY as an Escrow Holder in connection with these instructions and cannot give legal advice to any party hereto.

Escrow Holder is not to be held accountable or liable for the sufficiency or correctness as to form, manner of execution, or validity of any instrument deposited in this escrow, nor as to the identity, authority or rights of any person executing the same. Escrow Holder's duties hereunder shall be limited to the proper handling of such money and the proper safekeeping of such instruments, or other documents received by Escrow Holder, and for the disposition of same in accordance with the written instructions accepted by Escrow Holder.

The agency and duties of Escrow Holder commence only upon receipt of copies of these Escrow Instructions executed by all parties.

**24. FUNDS HELD IN ESCROW**

When the company has funds remaining in escrow over 90 days after close of escrow or estimated close of escrow, the Company shall impose a monthly holding fee of $25.00 that is to be charged against the funds held by the Company.

THIS AGREEMENT IN ALL PARTS APPLIES TO, INURES TO THE BENEFIT OF, AND BINDS ALL PARTIES HERETO, THEIR HEIRS, LEGATEES, DEVISEES, ADMINISTRATORS, EXECUTORS, SUCCESSORS AND ASSIGNS, AND WHENEVER THE CONTEXT SO REQUIRES THE MASCULINE GENDER INCLUDES THE FEMININE AND NEUTER, AND THE SINGULAR NUMBER INCLUDES THE PLURAL. THESE INSTRUCTIONS AND ANY OTHER AMENDMENTS MAY BE EXECUTED IN ANY NUMBER OF COUNTERPARTS, EACH OF WHICH SHALL BE CONSIDERED AS AN ORIGINAL AND BE EFFECTIVE AS SUCH.

MY SIGNATURE HERETO CONSTITUTES INSTRUCTION TO ESCROW HOLDER OF ALL TERMS AND CONDITIONS CONTAINED IN THIS AND ALL PRECEDING PAGES AND FURTHER SIGNIFIES THAT I HAVE READ AND UNDERSTAND THESE GENERAL PROVISIONS.

**Fidelity National Title Company** CONDUCTS ESCROW BUSINESS UNDER CERTIFICATE OF AUTHORITY NO. 305 ISSUED BY THE CALIFORNIA DEPARTMENT OF INSURANCE.

eAccount, Inc., a California corporation
By: _____                Date: ___8/24/10___
Matthew Pirvul

Panoche Valley LLC, a Limited Liability Company
By: _____                Date: ___8/20/10___
Todd Brown

Escrow No. 4322423-TS
Title Order No. 04269304

## EXHIBIT ONE

Parcel A:

Lots 2 of West Laurel Studios, in the City of San Diego, County of San Diego, State of California, according to Map thereof No. 15620 filed in the office of the County recorder of said San Diego County, September 21, 2007.

Parcel B:

A private access and utilities easement over, under, along and across the following described property:

That portion of West laurel studios, in the City of San Diego, County of San Diego, State of California, according to Map thereof No. 15620 (tentative Map no. 377076), filed in the office of the County recorder of said San Diego County, September 21, 2007, shown on said Map as "private access and utility easement" and more particularly described as follows:

Beginning at most Southerly corner of Lot 5 of Map no. 15620, also being a point on the Easterly right of way line of Kettner Boulevard; thence along said right of way line North 19° 43' 43" West, 5.00 feet; thence North 70° 17' 49" West; 38.21 feet; thence North 19° 42' 08" West, 20.10 feet; thence South 70° 16' 47" West, 1.04 feet; thence North 20° 00' 54"West, 53.68 feet; thence North 70° 18' 28" East, 15.07 feet; thence North 19° 43' 13" West, 21.36 feet to a point on the Northerly Lot line of Lot 10, also being a point on the Southerly right of way line of laurel street; thence Easterly along said Southerly right of way line North 70° 24' 05" East, 20.01 feet; thence leaving said right of way line South 19°42 '11"East, 18.25 feet; thence North 70° 12' 11" West, 3.33 feet; thence South 19°42 '11'East, 18.25 feet; thence North 70°24 '05"West, 4.67 feet; thence North 19° 42' 20" West, 18.25 feet; thence South 70° 29' 14" West, 4.67 feet; thence South 19° 38' 53" East, 23.38 feet; thence South 70° 16' 47" West, 8.00 feet; thence South 19° 42' 07" East, 11.33 feet; thence South 70° 16' 47" West, 8.66 feet; thence South 19° 42' 07" East, 24.17 feet to the South line of Lot 8; thence South 19° 42' 07" East, 19.29 feet to the South line of Lot 7; thence South 70° 16' 10" West, 24.16 feet; thence South 19° 43' 13" East, 21.90 feet to a point on the Southerly Lot line of said Lot 5; thence Westerly along said Southerly Lot line South 70° 22' 33" West, 50.21feet to the point of beginning

**EFFECTIVE JANUARY 1, 2007**
**NOTIFICATION TO BUYER ON DISPOSITION**
**OF CALIFORNIA REAL PROPERTY**

In accordance with Section 18662 of the Revenue and Taxation Code, a buyer may be required to withhold an amount equal to 3 1/3 percent of the sale price or an alternative withholding amount certified by the seller in the case of a disposition of California real property interest by either:

1.  A seller who is an individual, trust, estate, or when the disbursement instructions authorize the proceeds to be sent to a financial intermediary of the seller, OR
2.  A corporate seller that has no permanent place of business in California immediately after the transfer of title to the California property.

The buyer may become subject to penalty for failure to withhold an amount equal to the greater of 10 percent of the amount required to be withheld or five hundred dollars ($500).

However, notwithstanding any other provision included in the California statutes referenced above, no buyer will be required to withhold any amount or be subject to penalty for failure to withhold if any of the following apply:

1.  The sale price of the California real property conveyed does not exceed one hundred thousand dollars ($100,000).
2.  The seller executes a written certificate, under the penalty of perjury, certifying that the seller is a corporation with a permanent place of business in California.
3.  The seller, who is an individual, trust, estate or a corporation without a permanent place of business in California, executes a written certificate, under the penalty of perjury, of any of the following:
    A.  The California real property being conveyed is the seller s or decedent's principal residence (within the meaning of Section 121 of the Internal Revenue Code).
    B.  The last use of the property being conveyed was use by the transferor as the transferor's principal residence within the meaning of Section 121 of the Internal Revenue Code.
    C.  The California real property being conveyed is or will be exchanged for property of like kind (within the meaning of Section 1031 of the Internal Revenue Code), but only to the extent of the amount of gain not required to be recognized for California income tax purposes under Section 1031 of the Internal Revenue Code.
    D.  The California real property has been compulsorily or involuntarily converted (within the meaning of Section 1033 of the Internal Revenue Code) and that the seller intends to acquire property similar or related in service or use so as to be eligible for non recognition of gain for California income tax purposes under Section 1033 of the Internal Revenue Code.
    E.  The California real property transaction will result in a loss or net gain not required to be recognized for California income tax purposes.

The seller is subject to penalty for knowingly filing a fraudulent certificate for the purpose of avoiding the withholding requirement.

**Fidelity National Financial, Inc.**
**Privacy Statement**

Fidelity National Financial, Inc. and its subsidiaries ("FNF") respect the privacy and security of your non-public personal information ("Personal Information") and protecting your Personal Information is one of our top priorities. This Privacy Statement explains FNF's privacy practices, including how we use the Personal Information we receive from you and from other specified sources, and to whom it may be disclosed. FNF follows the privacy practices described in this Privacy Statement and, depending on the business performed, FNF companies may share information as described herein.

**Personal Information Collected**
We may collect Personal Information about you from the following sources:

Information we receive from you on applications or other forms, such as your name, address, social security number, tax identification number, asset information, and income information;

Information we receive from you through our Internet websites, such as your name, address, email address, Internet Protocol address, the website links you used to get to our websites, and your activity while using or reviewing our websites;

Information about your transactions with or services performed by us, our affiliates, or others, such as information concerning your policy, premiums, payment history, information about your home or other real property, information from lenders and other third parties involved in such transaction, account balances, and credit card information; and

Information we receive from consumer or other reporting agencies and publicly recorded documents.

**Disclosure of Personal Information**
We may provide your Personal Information (excluding information we receive from consumer or other credit reporting agencies) to various individuals and companies, as permitted by law, without obtaining your prior authorization. Such laws do not allow consumers to restrict these disclosures. Disclosures may include, without limitation, the following:

To insurance agents, brokers, representatives, support organizations, or others to provide you with services you have requested, and to enable us to detect or prevent criminal activity, fraud, material misrepresentation, or nondisclosure in connection with an insurance transaction;

To third-party contractors or service providers for the purpose of determining your eligibility for an insurance benefit or payment and/or providing you with services you have requested;

To an insurance regulatory authority, or a law enforcement or other governmental authority, in a civil action, in connection with a subpoena or a governmental investigation;

To companies that perform marketing services on our behalf or to other financial institutions with which we have joint marketing agreements and/or

To lenders, lien holders, judgment creditors, or other parties claiming an encumbrance or an interest in title whose claim or interest must be determined, settled, paid or released prior to a title or escrow closing.

We may also disclose your Personal Information to others when we believe, in good faith, that such disclosure is reasonably necessary to comply with the law or to protect the safety of our customers, employees, or property and/or to comply with a judicial proceeding, court order or legal process.

(privacy.wpi)(08-08)                                    Page 2 of 2                                    Effective Date:  5/1/2008

<u>Disclosure to Affiliated Companies</u> - We are permitted by law to share your name, address and facts about your transaction with other FNF companies, such as insurance companies, agents, and other real estate service providers to provide you with services you have requested, for marketing or product development research, or to market products or services to you. We do not, however, disclose information we collect from consumer or credit reporting agencies with our affiliates or others without your consent, in conformity with applicable law, unless such disclosure is otherwise permitted by law.

<u>Disclosure to Nonaffiliated Third Parties</u> - We do not disclose Personal Information about our customers or former customers to nonaffiliated third parties, except as outlined herein or as otherwise permitted by law.

**Confidentiality and Security of Personal Information**
We restrict access to Personal Information about you to those employees who need to know that information to provide products or services to you. We maintain physical, electronic, and procedural safeguards that comply with federal regulations to guard Personal Information.

**Access To Personal Information/**
**Requests for Correction, Amendment, or Deletion of Personal Information**
As required by applicable law, we will afford you the right to access your Personal Information, under certain circumstances to find out to whom your Personal Information has been disclosed, and request correction or deletion of your Personal Information. However, <u>FNF's current policy is to maintain customers' Personal Information for no less than your state's required record retention requirements for the purpose of handling future coverage claims.</u>

For your protection, <u>all requests made under this section must be in writing and must include your notarized signature to establish your identity.</u> Where permitted by law, we may charge a reasonable fee to cover the costs incurred in responding to such requests. Please send requests to:

**Chief Privacy Officer**
Fidelity National Financial, Inc.
601 Riverside Avenue
Jacksonville, FL  32204

**Changes to this Privacy Statement**
This Privacy Statement may be amended from time to time consistent with applicable privacy laws. When we amend this Privacy Statement, we will post a notice of such changes on our website. The effective date of this Privacy Statement, as stated above, indicates the last time this Privacy Statement was revised or materially changed.

### Notice of Available Discounts

Pursuant to Section 2355.3 in Title 10 of the California Code of Regulations Fidelity National Financial, Inc. and its subsidiaries ("FNF") must deliver a notice of each discount available under our current rate filing along with the delivery of escrow instructions, a preliminary report or commitment. Please be aware that the provision of this notice does not constitute a waiver of the consumer's right to be charged the filed rate. As such, your transaction may not qualify for the below discounts.

You are encouraged to discuss the applicability of one or more of the below discounts with a Company representative. These discounts are generally described below; consult the rate manual for a full description of the terms, conditions and requirements for such discount. These discounts only apply to transactions involving services rendered by the FNF Family of Companies. This notice only applies to transactions involving property improved with a one-to-four family residential dwelling.

**FNF Underwritten Title Companies**
FNTC - Fidelity National Title Company
FNTCCA - Fidelity National Title Company of California

**FNF Underwriter**
FNTIC - Fidelity National Title Insurance Co.

**Available Discounts**

**CREDIT FOR PRELIMINARY REPORTS AND/OR COMMITMENTS ON SUBSEQUENT POLICIES (FNTIC)**
Where no major change in the title has occurred since the issuance of the original report or commitment, the order may be reopened within 12 months and all or a portion of the charge previously paid for the report or commitment may be credited on a subsequent policy charge within the following time period from the date of the report.

**FEE REDUCTION SETTLEMENT PROGRAM (FNTC, FNTCCA and FNTIC)**
Eligible customers shall receive a $20.00 reduction in their title and/or escrow fees charged by the Company for each eligible transaction in accordance with the terms of the Final Judgments entered in The People of the State of California.

**DISASTER LOANS (FNTIC)**
The charge for a Lender's Policy (Standard or Extended coverage) covering the financing or refinancing by an owner of record, within 24 months of the date of a declaration of a disaster area by the government of the United States or the State of California on any land located in said area, which was partially or totally destroyed in the disaster, will be 50% of the appropriate title insurance rate.

**CHURCHES OR CHARITABLE NON-PROFIT ORGANIZATIONS (FNTIC)**
On properties used as a church or for charitable purposes within the scope of the normal activities of such entities, provided said charge is normally the church's obligation the charge for an owner's policy shall be 50% to 70% of the appropriate title insurance rate, depending on the type of coverage selected. The charge for a lender's policy shall be 40% to 50% of the appropriate title insurance rate, depending on the type of coverage selected.

**EMPLOYEE RATE (FNTC, FNTCCA and FNTIC)**
No charge shall be made to employees (including employees on approved retirement) of the Company or its underwritten, subsidiary or affiliated title companies for policies or escrow services in connection with financing, refinancing, sale or purchase of the employees' bona fide home property. Waiver of such charges is authorized only in connection with those costs which the employee would be obligated to pay, by established custom, as a party to the transaction.